## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| THOMAS HODGES, HALEYRAE CANNELL, DANIELLE BENEDICT, CHRISTOPHER BRITTON, XE DAVIS, AND EMILY HOZA, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-24127 -BB |
| Plaintiffs, | |
| v. | |
| GOODRX HOLDINGS, INC., | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e), Plaintiffs Thomas Hodges, HaleyRae Cannell, Danielle Benedict, Christopher Britton, Xe Davis, and Emily Hoza (collectively, "Plaintiffs"), on behalf of the putative Class, respectfully move the Court to enter an order: (1) preliminarily certifying a proposed nationwide Class for settlement purposes only, and appointing the Plaintiffs as the representatives of the Class and the undersigned as counsel for the Class; (2) preliminarily approving the Parties' proposed Class Action Settlement Agreement, including all exhibits thereto (collectively, the "Settlement"); (3) approving the notice plan and forms of notice to the Class proposed by the Settlement; (4) appointing Kroll Settlement Administration ("Kroll") as the Settlement Administrator; (5) setting dates and procedures for Opt-Outs, objections, and a final fairness hearing under Federal Rule of Civil Procedure 23(c)(2); and (6) issuing a preliminary injunction for purposes of protecting the Court's jurisdiction while the Court considers whether the settlement should be finally approved. This motion is based on the

following Memorandum of Points and Authorities, the accompanying declarations of Jonathan B. Cohen, and Scott M. Fenwick, and the exhibits attached thereto.

Prior to the filing of this motion, the undersigned conferred with counsel for GoodRx Holdings, Inc. ("GoodRx" or "Defendant") pursuant to Local Rule 7.1(a)(3) regarding this motion and the relief it seeks, and GoodRx's counsel stated their non-opposition to this motion for purposes of settlement only.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 9

II.     NATURE OF THE LITIGATION AND PROCEDURAL HISTORY ............................. 10

III.    SUMMARY OF THE SETTLEMENT ......................................................................... 12

    A.   The Class........................................................................................................... 12

    B.   Settlement Benefits to the Class ....................................................................... 12

    C.   The Release of the Class's Claims..................................................................... 13

    D.   Attorneys' Fees and Expenses .......................................................................... 13

    E.   Settlement Administration and Notice............................................................... 13

    F.   Settlement Class Members' Right to Opt-Out or Object ................................... 14

    G.   Schedule for Settlement Administration............................................................ 15

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................ 16

    A.   Legal Standard .................................................................................................. 16

    B.   The Relevant Factors Support a Preliminary Determination That the Settlement
         Is Well Within the Range of Approval .............................................................. 17

        1.   The Settlement Is the Product of a Good-Faith, Informed, and
              Arm's-Length Negotiation......................................................................... 18

        2.   The Strength of Plaintiffs' Case Balances Well Against the
              Settlement Amount, and the Complexity, Length, and Expense
              of Further Litigation Favors Settlement Now............................................ 18

        3.   Competent Counsel Agree That the Settlement Is Fair ........................... 21

        4.   The Stage of Proceedings and Amount of Discovery Completed
              Favors Settlement Now.............................................................................. 21

    C.   The Notice Program Should Be Approved as It Is the Best Notice Practicable
         Under the Circumstances .................................................................................. 22

    D.   Class Counsel's Attorneys' Fees and Expenses Are Reasonable ..................... 23

    E.   The Class Is Likely to Be Certified.................................................................... 23

1.    Numerosity Is Easily Satisfied..................................................................... 24

2.    Common Questions of Law and Fact Exist ............................................... 25

3.    Class Representatives' Claims Are Typical of the Class's Claims.......................... 25

4.    Class Representatives and Class Counsel Adequately Represent the Class ............ 26

5.    The Rule 23(b)(3) Requirements Are Satisfied ....................................... 27

CONCLUSION...............................................................................................28

## **TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Facebook, Inc.*,
  No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021 and July 13, 2021)...................................... 12

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................... 15, 16, 18, 20

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co*.,
  211 F.R.D. 457 (S.D. Fla. 2002)........................................................................... 8

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988)........................................................................... 13

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ............................................................................ 9

*Burrows v. Purchasing Power, LLC*,
  No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ........................................ 16

*Busby v. JRHBW Realty, Inc*.,
  513 F.3d 1314 (11th Cir. 2008) ........................................................................... 18

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ............................................................................ 17

*Chicago Teachers Union, Local No. 1 v. Board of Educ. Of City of Chicago*,
  797 F.3d 426 (7th Cir. 2015)............................................................................... 20

*Cooper v. S. Co.*,
  390 F.3d 695 (11th Cir. 2004) ............................................................................ 18

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................................ 13

*Cox v. Am. Cast Iron Pipe Co*.,
  784 F.2d 1546 (11th Cir. 1986) ........................................................................... 16

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983)............................................................................. 18

*Demsheck v. Ginn Dev. Co., LLC*,
  No. 3:09-CV-335-J-25TEM, 2013 WL 12177811 (M.D. Fla. Sept. 30, 2013) ...................... 19

*Fabricant v. Sears Roebuck*,
  202 F.R.D. 310 (S.D. Fla. 2001)........................................................................... 16

*Fresco v. Auto Data Direct, Inc.*,
No. 03-cv-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007)................................................. 8

*Hines v. Widnall*,
334 F.3d 1253 (11th Cir. 2003) ............................................................................................... 18

*Hunter v. Booz Allen Hamilton Inc.*,
No. 2:19-cv-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023)......................................... 12

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp 2d 164 (S.D.N.Y. 2000)........................................................................................ 12

*In re Domestic Air Transport.*,
148 F.R.D. 297 (N.D. Ga. 1993)............................................................................................... 8

*In re Google LLC Street View Elec. Commc'ns Litig.*,
No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)................................. 12

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................................ 11

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ........................................................................................... 8, 13

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) ............................................................................................... 14

*Kennedy v. Tallant*,
710 F.2d 711 (11th Cir. 1983) ................................................................................................. 18

*Kurowski v Rush System for Health*,
No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .................................................. 10

*Legg v. Spirit Airlines, Inc.*,
315 F.R.D. 383 (S.D. Fla. 2015)............................................................................................... 16

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ................................................................. 10, 11, 13, 16

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013)............................................................................................... 16

*Morgan v. Public Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016)..................................................................................... 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)................................................................................................................. 15

*Navelski v. Int'l Paper Co.*,
   No. 3:14-cv-445, 2017 WL 1132569 (N.D. Fla. Mar. 25, 2017)............................................. 20

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................................. 10

*Smith v. Wm. Wrigley Jr. Co.*,
   No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. Jun. 15, 2010)............................................. 8

*Towers v. City of Chicago*,
   173 F.3d 619 (7th Cir. 1999) ................................................................................................ 14

*Walco Investments, Inc. v. Thenen*,
   168 F.R.D. 315 (S.D. Fla. 1996) ........................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)........................................................................................................... 17

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998) ......................... 8

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ............................................................................................. 15

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ............................................................................................. 18

*Wolff v. Cash 4 Titles*,
   No. 03–22778– CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)...................................... 15

**Statutes**

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 ........................................... 3

California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 ........................................ 3

Confidentiality of Medical Information Act, Cal. Civ. Code § 56.06 ........................................... 3

Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10 ........................................... 3

Confidentiality of Medical Information Act, Cal. Civ. Code § 56.101 ......................................... 3

Confidentiality of Medical Information Act, Cal. Civ. Code § 56.36 ........................................... 3

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1) ................................. 3

Florida Security of Communications Act ("FSCA"), Fla. Stat. §§ 934.01 .................................... 4

Illinois Consumer Fraud and Deceptive Business Practices Act,
815 Ill. Comp. Stat. Ann. §§ 505/1 ............................................................................... 4

New York Civ. Rights Laws §§ 50, 51 ............................................................................... 4

New York General Business Law § 349 ............................................................................... 4

Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"),
18. Pa. C.S. § 5725 ........................................................................................................ 3

Security Breach and Notification Act, § 12:18 (The New York SHIELD Act); ........................... 4

Unfair Competition Law – Unfair and Unlawful, Cal. Bus. & Prof. Code §§ 17200 ................... 3

**Other Authorities**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.25 (4th ed. 2002) ............ 8

*Manual for Complex Litig*. § 21.632 (4th ed. 2004) ............................................................. 15

*Manual for Complex Litig*. § 30.42 (3rd ed. 1995) .............................................................. 9

*Manual for Complex Litig*. § 30.41 (3rd ed. 1995) .............................................................. 8

*Newberg on Class Actions*, § 11:50 ................................................................................. 11

**Rules**

Fed. R. Civ. P. § 23 ....................................................................................................... 2

Fed. R. Civ. P. § 23(a) .................................................................................................... 16

Fed. R. Civ. P. § 23(a)(1) ................................................................................................ 16

Fed. R. Civ. P. § 23(a)(1)–(4) ........................................................................................... 16

Fed. R. Civ. P. § 23(a)(2) ............................................................................................. 17, 19

Fed. R. Civ. P. § 23(a)(3) ............................................................................................. 17, 18

Fed. R. Civ. P. § 23(a)(4) ................................................................................................ 18

Fed. R. Civ. P. § 23(b)(3) ........................................................................................... passim

Fed. R. Civ. P. § 23(e) ................................................................................................ 9, 14

Fed. R. Civ. P. § 23(e)(1) ............................................................................................. 9, 14

Fed. R. Civ. P. § 23(e)(1)(B)(i) .......................................................................................... 9

Fed. R. Civ. P. § 23(e)(1)(B)(i)–(ii) ..................................................................................... 9

Fed. R. Civ. P. § 23(e)(3) ................................................................................................. 9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of class action settlement with Defendant GoodRx. The terms of the proposed class action settlement ("Settlement") are set forth in a Settlement Agreement dated October 27, 2023, attached to the Declaration of Jonathan B. Cohen ("Cohen Decl.")[1] as **Exhibit A-3** ("Settlement Agreement" or "Agreement").[2]

## I.     INTRODUCTION

This is a class action arising from Defendant's alleged disclosure of Plaintiffs and Class Members' personal information, without their consent, to third parties including Meta Platforms, Inc. ("Meta"), Criteo Corp. ("Criteo"), and Google LLC, ("Google") via tracking software and business analytical tools that were installed on GoodRx's website, https://www.goodrx.com, and the GoodRx mobile application (collectively, the "GoodRx Platform" or "Platform").

The proposed Settlement provides substantial cash benefits—a ***$13,000,000 non-reversionary*** common fund—to all Class Members whose personal information was allegedly disclosed without consent. This is an outstanding result. The proposed Settlement was reached by the undersigned counsel only after developing a comprehensive understanding of the merits of the case and in order to eliminate the risk and uncertainty of arbitral claims, proceedings in this Court and in future appeals, as well as the ongoing litigation risks described herein. Plaintiffs respectfully request that the Court preliminarily approve the Settlement because it is fair, reasonable, and

---

[1] The Declaration of Jonathan B. Cohen is attached hereto as **Exhibit A**.

[2] Unless otherwise indicated, the capitalized and defined terms herein shall have the same definitions as set forth in the Settlement Agreement.

adequate, includes a comprehensive Notice Plan that is the best means of providing Notice under the circumstances, and satisfies Federal Rule of Civil Procedure 23.

## II.    NATURE OF THE LITIGATION AND PROCEDURAL HISTORY

Prior to filing this case, Class Counsel conducted an investigation into GoodRx's external sharing of data collected from visitors to its Website. Cohen Decl. ¶ 17. Plaintiffs contend that GoodRx's implementation and usage of internet tracking technologies supplied by third parties, including pieces of code known as software development kits (SDKs) and tracking Pixels, resulted in certain protected personal and health information being purportedly disclosed to specific vendors for marketing, analytics, and other business purposes. *Id.*

In March 2023, Class Counsel provided notice to GoodRx of the alleged violations and expressed their intent to pursue high-volume individual arbitrations considering the apparent binding arbitration agreement between GoodRx and its users. *Id.* ¶ 16. In response, GoodRx, through its counsel, denied all claims asserted against it, denied all allegations of liability, and denied that any plaintiff is permitted to file suit against it in court without GoodRx's consent in light of the mandatory arbitration clause contained in its Terms of Use. But in recognition of the risks and costs of protracted litigation and arbitration, GoodRx agreed to discuss a potential global resolution. *Id.*

Vigorous and extensive arm's-length settlement negotiations took place over the course of several months between Class Counsel and GoodRx's Counsel and were overseen by an experienced and highly reputable mediator, Bennett G. Picker of Stradley Ronon. *Id.* ¶ 18. The Parties conducted two separate mediations and multiple telephonic conferences with Mr. Picker in an effort to resolve their disputes. *Id.* The Parties then negotiated the terms of the comprehensive

Settlement Agreement that is now being presented to the Court for review and preliminary approval. *Id.* ¶¶ 18-19.

Each aspect of the Settlement was heavily negotiated. The Plaintiffs' ability to prosecute a high number of individual arbitrations contributed to the broad Settlement Class in this case, which includes consumers who would have otherwise been compelled to pursue their claims through individual, non-class arbitration. Plaintiffs further investigated the anticipated defenses, made a thorough study of the legal principles applicable to the claims and defenses, and conducted a detailed assessment of the strengths and weaknesses of the Parties' respective positions, including information GoodRx supplied to Class Counsel in the context of mediation.

Plaintiffs filed the operative Complaint in this action against GoodRx on October 27, 2023. Doc. 1. Plaintiffs allege 21 causes of action for: (1) Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; (2) Invasion of Privacy Under Common Law – Intrusion Upon Seclusion; (3) Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*; (4) Invasion of Privacy Under California's Constitution; (5) California Common Law Invasion of Privacy – Intrusion Upon Seclusion; (6) Violation of the Unfair Competition Law – Unfair and Unlawful, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (7) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.06; (8) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10; (9) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.101; (10) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.36; (11) Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code. §§ 1750, *et seq.* ("CLRA"); (12) Violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18. Pa. C.S. § 5725; (13) Violation of the Florida Security of Communications Act ("FSCA"), Fla.

Stat. §§ 934.01, *et seq.*; (14) Invasion of Privacy Under New Jersey's Constitution; (15) Violation

of New York Civ. Rights Laws §§ 50, 51; (16) Violation of the Security Breach and Notification

Act, § 12:18 (The New York SHIELD Act); (17) Violation of New York General Business Law §

349; (18) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill.

Comp. Stat. Ann. §§ 505/1, *et seq.*; (19) Negligence Per Se; (20) Common Law Negligence; and

(21) Unjust Enrichment/Quasi-Contract. *Id.* ¶ 20.

## III.   SUMMARY OF THE SETTLEMENT

### A.  The Class

Pursuant to the Settlement Agreement and Federal Rule of Civil Procedure Rule 23(b)(3),

the Parties agree to the conditional certification for settlement purposes of the following Class:

> All natural persons in the United States who used any website, app, or service made
> available by or through GoodRx at any point prior to the execution date of the
> Settlement Agreement. Excluded from the Settlement Class are Defendant and its
> affiliates, parents, subsidiaries, officers, and directors, the Opt-Outs, as well as the
> judges presiding over this matter and the clerks of said judges.

Settlement Agreement ¶ B.38; Cohen Decl., ¶ 21.  The class is estimated to include millions of

people.

### B.  Settlement Benefits to the Class

GoodRx will establish a $13,000,000 non-reversionary Settlement Fund from which Class

Members submitting valid claims will receive *pro rata* cash payments, after the deduction of Class

Counsel's Attorneys' Fees and Litigation Expenses and the Settlement Administrator's fees and

expenses. Settlement Agreement ¶¶ B(40), D(2), E(1)-(2), H(7). To participate in the Settlement

and receive a cash payment, Class Members merely need to submit a paper or online Claim Form

on or before the Claim Deadline. *Id.* ¶¶ H(2)-(3).

### C.  The Release of the Class's Claims

In exchange for GoodRx's $13,000,000 non-reversionary payment and remedial measures, Plaintiffs and Class Members will release and discharge GoodRx from all claims that relate in any way to the disclosures of consumer data to third parties, including through GoodRx's use of tracking technologies, including Pixels, Software Development Kits (SDKs), cookies, Application Program Interfaces (APIs), or any similar technologies, or claims that were or could have been asserted in the Litigation. *Id*. ¶ F.

### D.  Attorneys' Fees and Expenses

The Settlement permits Class Counsel to seek an award of attorneys' fees up to $4,550,000, which is 35% of the $13,000,000 Settlement Fund, and reasonable Litigation Expenses not to exceed $25,000. *Id*. ¶ L(1). Class Counsel's experience in data privacy class action matters and ability to efficiently manage this Litigation were vital in procuring the $13,000,000 Settlement Fund. Cohen Decl., ¶¶ 6-8, 10-13, 15.

### E.  Settlement Administration and Notice

The Parties agreed to utilize Kroll as the Settlement Administrator for this matter. *Id*. ¶ 28. The Settlement Administrator has vast experience handling the settlement administration for class action settlements, including data privacy class actions such as this. Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Support of Preliminary Approval of Class Action Settlement, attached hereto as **Exhibit B** ("Fenwick Decl."), ¶ 2.

The proposed Notice Program in this case is robust and consists of direct notice through email to Class Members for whom the Settlement Administrator, via GoodRx, has a valid email address. Settlement Agreement ¶¶ I(1). The proposed Notice Program also includes supplemental notice via publication and posting the Long Form Notice on the Settlement Website. *Id*.; Fenwick

Decl., ¶¶ 8-9. All important documents in this case will be posted to the Settlement Website for easy access to information about this matter and Settlement. Settlement Agreement ¶ I(1). The Notice Date, the date by which Notice will be issued to the Class, is 45 days after this Court potentially grants Preliminary Approval. *Id*. ¶ I(1)(d).

### F. Settlement Class Members' Right to Opt-Out or Object

Class Members have 60 days from the Notice Date to Opt-Out of the Settlement or Object to the Settlement. *Id*. ¶¶ B(28)-(29), K, J. In order to validly Opt-Out from the Settlement, Class Members must mail a Request for Exclusion that (a) states the Settlement Class Member's full name, address and telephone number; (b) contains the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian or person acting under a power of attorney; and (c) states unequivocally the Settlement Class Member's intent to be excluded from the Settlement. *Id*. ¶ K; Cohen Decl., ¶ 38.

In order to validly object to the Settlement, the Class Member's Objection must (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof or an attestation that the Settlement Class Member is a member of the Settlement Class; (iv) state whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's

duly authorized attorney or other duly authorized representative, if any, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objecting Settlement Class Member and/or the objecting Settlement Class Member's counsel has filed an objection to any proposed class action settlement in the past three (3) years. *Id.* ¶ J(2); Cohen Decl., ¶¶ 39, 41. All Settlement Class Members will be apprised of their right to opt-out and/or object to the Settlement through the Notice Program, including the Postcard Notice.

### G. Schedule for Settlement Administration

The Settlement Agreement includes the following Settlement Timeline to efficiently identify a schedule for proceeding with this Settlement including Settlement Administration:

### SETTLEMENT TIMELINE

| **From Order Granting Preliminary Approval** | |
| --- | --- |
| Defendant will Provide the Class List to the Settlement Administrator | +14 days |
| Defendant to pre-fund Notice and Admin. Costs | +14 days |
| Notice Date | +45 days |
| Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Costs and Expenses | +90 days (15 days before Objection Deadline) |
| Objection Deadline | +105 days (60 days after Notice Date) |
| Opt-Out Date | +105 days (60 days after Notice Date) |
| Claims Deadline | +105 days (60 days after Notice Date) |
| | |
| **Final Approval Hearing** | + 130 days (at minimum) from Order Granting Preliminary Approval |
| Motion for Final Approval | -14 days before Final Approval Hearing |
| Payment of Attorneys' Fees, Costs, and Expenses | +14 days after entry of Final Approval Order |
| Settlement Funding Payment | +14 days after entry of Final Approval Order |
| Claim Payments to Class Members | +45 days of the Effective Date |
| Deactivation of Settlement Website | +180 days of the Effective Date |

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.  Legal Standard

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

The procedure for review of a proposed class action settlement is a two-step process. Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Id.* (quoting Manual for Complex Litig. §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See*

Manual for Complex Litig. § 30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

### B. The Relevant Factors Support a Preliminary Determination That the Settlement Is Well Within the Range of Approval

Rule 23(e)(1) provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes. As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

In assessing the substance of any settlement, courts in this Circuit also look to six so-called "*Bennett*" factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Here, the Court will "likely be able to" finally approve this Settlement—it is fair, within the range of possible approval, was reached while the merits of the case were uncertain and allows the Parties to avoid the uncertainty and expense of prolonged litigation, among other things—and thus preliminary approval should be granted.

### 1. The Settlement Is the Product of a Good-Faith, Informed, and Arm's-Length Negotiation

The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with data privacy class action litigation and with the legal and factual issues of this case. Cohen Decl. ¶¶ 21. Indeed, as explained above, the Settlement was reached only after two separate mediations and multiple conferences with a neutral mediator, Bennett G. Picker, Senior Counsel of Stradley Ronon. This factor readily weighs in favor of preliminary approval. *See Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel"); *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

### 2. The Strength of Plaintiffs' Case Balances Well Against the Settlement Amount, and the Complexity, Length, and Expense of Further Litigation Favors Settlement Now

While Plaintiffs and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to litigation. Defendant disputes Plaintiffs' allegations and denies that it is liable for any alleged harm caused to Plaintiffs or the Class. Of note, Defendant indicated it would strenuously defend the case and relied on decisions such as *Kurowski v Rush System for Health*, No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023), for the proposition that Plaintiffs lack any viable

damages claims based on disclosed data. *Id.* (dismissing plaintiffs' breach of implied duty of confidentiality, intrusion upon seclusion, and violations of federal Wiretap Act, Illinois Consumer Fraud and Deceptive Business Practices Act, and Illinois Uniform Trade Practices Act claims in a pixel class action while permitting only plaintiffs' injunctive relief claim under the Illinois Consumer Fraud and Deceptive Business Practices Act to survive).

The issues in this case also center on a developing and especially risky field of law—Pixel litigation. Even assuming Plaintiffs would survive Defendant's expected motion to dismiss, there is no guarantee that the Court or a jury would find Plaintiffs' arguments more compelling during trial or subsequent appeals. Additionally, there are inherent risks in taking any Pixel class action to trial, including pre-trial risk of obtaining class certification and defeating summary judgment. And plaintiffs in Pixel data privacy cases often allege injuries, such as loss of value and control of their sensitive information and invasion of privacy, which are disputed and difficult to prove. *C.f. In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable.").

Even if Plaintiffs were to achieve class certification and succeed at trial, or if Defendant were to obtain summary judgment, either Defendant or Plaintiffs would likely appeal, causing further delay and increasing expense. The Settlement allows for Class Members to obtain benefits soon—as opposed to potentially waiting for years—and eliminates the potential of receiving no benefits. *See Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50.

To be sure, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp 2d 164, 174 (S.D.N.Y. 2000) (internal citation omitted); *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, at *6 (S.D. Ohio May 2, 2023) (same). This case is no different in that it is a complex class action case based on a new trend of Pixel tracking software litigation. Litigating this case to a favorable conclusion will require considerable time and resources, including extensive electronic discovery, achieving class certification, defeating summary judgment, and prevailing at trial.

Finally, as explained above, the Settlement provides a $13,000,000 non-reversionary fund from which Class Members will be compensated. It is anticipated that Class Members will receive anywhere from *$16* to *$9* each, conservatively assuming a claim rate of 3% to 5%,[3] an estimated 16.7 million persons for whom GoodRx has email addresses to be used for direct notice, attorneys' fees of $4,550,000, and administration costs of $620,000.  Fenwick Decl., ¶ 13; Cohen Decl., ¶ 23. Compared against other privacy cases, this Settlement provides an exceptional amount of monetary relief to Class Members. Privacy cases have frequently been settled for very little meaningful monetary relief, if any.  *E.g., In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc*., No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for

---

[3] A recent Federal Trade Commission study, based on data from more than 100 consumer class actions, calculated the weighted mean claims rate as 4%-5% and the median claims rate as 9%. See Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns (Sept. 2019), pp. 21-22, available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs).

Accordingly, given the risks Plaintiffs face, and the delay and expense associated with pursuing this class action, preliminary approval of the proposed Settlement is warranted. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

### 3. Competent Counsel Agree That the Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Courts have determined that settlements may be reasonable even where plaintiffs recover only part of the relief requested in their complaint. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

Class Counsel is thoroughly familiar with data privacy class action litigation and fully endorses the proposed Settlement. The work of proposed Class Counsel in this action to date, as well as their experience prosecuting complex litigation matters, demonstrates that they are qualified to represent the Class and opine on the fairness of the proposed Settlement. Cohen Decl. ¶¶ 6-15, 48-49.

### 4. The Stage of Proceedings and Amount of Discovery Completed Favors Settlement Now

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Still,

"courts favor early settlement" and "vast formal discovery need not be taken." *Id.* Further, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Id.* at 1325

Plaintiffs settled this action after months of investigation and an exchange of information in connection with mediation. Cohen Dec. ¶¶ 18-19, 47-48. Further, Plaintiffs were informed by their analysis of other Pixel litigation and were able to assess the size of the Class, merits of the Class's claims, and Defendant's financial resources available to pay for a settlement or judgment. *Id.* ¶¶ 48-49. In conducting this diligence, Plaintiffs have spent significant time and effort researching and preparing this case. *Id.* ¶¶ 17, 46. Thus, this factor supports preliminary approval of the Settlement.

### C. The Notice Program Should Be Approved as It Is the Best Notice Practicable Under the Circumstances

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to present their objections." *Towers v. City of Chicago*, 173 F.3d 619, 628 (7th Cir. 1999); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

The proposed Notice Plan meets these requirements. The plan is based largely on a list of allegedly impacted individuals whose names and emails addresses are maintained by Defendant—i.e., Defendant's customers. Settlement Agreement ¶ I. The Settlement Administrator will provide direct email notice to these Class Members. *Id.* Courts consistently approve of email as a primary method of notice. *E.g.*, *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1262–63 (S.D. Fla. 2016).

An additional notice will be provided via publication to reach customers for whom GoodRx does not have records. *Id.* Furthermore, the Settlement Administrator will establish a Settlement Website that Class Members can view for more information regarding the Settlement. *Id.* Thus, the proposed Notice Plan is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and satisfies due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

### D.  Class Counsel's Attorneys' Fees and Expenses Are Reasonable

Class Counsel will separately file a motion for an award of attorneys' fees not to exceed 35% of the Settlement Fund, and reimbursement of litigation expenses not to exceed $25,000. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33 1/3% of settlement value); *Wolff v. Cash 4 Titles*, No. 03–22778– CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (approving 33% award and noting "[t]he requested fee is entirely consistent with fee awards in comparable cases nationwide, within the Eleventh Circuit, and within the Southern and Middle Districts of Florida."). Settlement Agreement ¶ L. The effectiveness and finality of the Settlement are not dependent on any award of fees, costs, and expenses—all of which are subject to court approval. *Id.* By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of any fee or expense application, which will be decided at the Final Approval hearing.

### E.  The Class Is Likely to Be Certified

When assessing preliminary approval of a proposed settlement, courts also determine whether the proposed Class is appropriate for certification. *See* Manual for Complex Litig. § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class

counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where, as here, certification is sought under Rule 23(b)(3), common questions of law or fact must predominate and a class action must be superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. Courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Courts in the district agree that "[a] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

### 1. Numerosity Is Easily Satisfied

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). Although "[p]arties seeking class certification do not need to know the precise number of class members," "they must make reasonable estimates with support as to the size of the proposed class." *Legg v. Spirit Airlines, Inc*., 315 F.R.D. 383 (S.D. Fla. 2015); se*e also Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'"). To satisfy the numerosity requirement in the Eleventh Circuit, generally "more than forty [class members is] adequate." *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, GoodRx estimates there are more than 16.7 million Class Members (consisting of users of its Website). Cohen Decl. ¶ 22. This easily satisfies the numerosity requirement.

### 2.   Common Questions of Law and Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For this requirement, "even a single common question will do.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2556.

Here, there are questions of law and fact common to the proposed Class that predominate over any individual questions. These questions include, but are not limited to:

- whether Defendant owed a duty to Plaintiffs and members of the Class to adequately protect their personal information and to provide timely and accurate notice of its use of the Pixel to Plaintiffs and the Class, and whether it breached these duties;

- whether Defendant violated federal and state laws thereby breaching its duties to Plaintiffs and the Class as a result of its use of the Pixel;

- whether Defendant knew or should have known that its use of the Pixel transmitted personal information to third parties without consent; and,

- whether Defendant's conduct caused the unauthorized disclosure of Plaintiffs and Class Members' personal information.

### 3.   Class Representatives' Claims Are Typical of the Class's Claims

Typicality under Fed. R. Civ. P. 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*,

334 F.3d 1253, 1256 (11th Cir. 2003). Typicality is satisfied when the claims or defenses of the class "arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1357 (11th Cir. 2009). But "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal quotations omitted). Simply put, when the same course of conduct is directed at both the named plaintiffs and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' claims are typical of the claims of the Class because both arise out of the same course of conduct by Defendant—use of the Pixel—and rest on exactly the same legal theory—whether Defendant owed Plaintiffs and Class Members a duty to adequately protect their personal information and not disclose it without authorization, and whether it breached these duties. Regardless, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. Class Representatives and Class Counsel Adequately Represent the Class

Rule 23(a)(4) requires that Plaintiffs "fairly and adequately protect the interests of the class." It "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008); *Amchem*, 521 U.S. at 625-26.

Both inquiries are satisfied here. Plaintiffs have no conflicts with the Class and have actively participated in the case. Cohen Decl. ¶ 20. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 200 data privacy class actions in state and federal courts throughout the country. *Id*. ¶¶ 6-15, 48-49. Class Counsel have led this Litigation from the outset including investigating Class Members' injuries and claims, researching legal theories and remedies, drafting the Complaint, and negotiating a well-informed Settlement on behalf of the Settlement Class. *Id*. ¶¶ 17, 20. Class Counsel's extensive experience with data privacy class actions was also integral to resolving this matter for a substantial sum without the need to litigate this matter for multiple years *Id*. ¶¶ 6-15, 48-49. Accordingly, Class Representatives and Class Counsel will adequately represent the Class.

### 5. The Rule 23(b)(3) Requirements Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." Fed. R. Civ. P. 23(b)(3). Predominance and superiority exist in this case. The numerous questions common to the Class, including those listed above, demonstrate not only commonality under Rule 23(a)(2) but also predominance over any individual issues. *See, e.g., Demsheck v. Ginn Dev. Co., LLC*, No. 3:09-CV-335-J-25TEM, 2013 WL 12177811, at *3 (M.D. Fla. Sept. 30, 2013) (common questions predominated because the "crux of all class members' claims" was an allegation that the defendant treated them identically in failing to provide them with a property report before they signed a real estate purchase contract). The key elements of Plaintiffs' claims—the existence of the Pixels on Defendant's Website and related, alleged unauthorized sharing of Plaintiffs' personal information to third parties, Defendant's knowledge or constructive knowledge of those unauthorized disclosures, and the existence and amount of

resulting damages, for example—are common issues that predominate for the entire Class, and thus the class is "sufficiently cohesive to warrant adjudication by representation." *Chicago Teachers Union, Local No. 1 v. Board of Educ. Of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (citation omitted). Moreover, the predominance requirement "scarcely demands commonality as to all questions." *Id.* Accordingly, the predominance element under Rule 23(b)(3) is satisfied.

Furthermore, the class action device is superior to other available procedural methods for adjudicating the claims at issue in this case. The damages and other financial detriment suffered by the Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation against GoodRx. Thus, members of the Class would have little interest in pursuing their own separate actions given that "this matter involves relatively small individual claims compared to the cost of litigating complexing legal issues against a relatively large corporate entity like [Defendant]." *Navelski v. Int'l Paper Co.*, No. 3:14-cv-445, 2017 WL 1132569, at *18 (N.D. Fla. Mar. 25, 2017); *see also Amchem,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully request that the Court: (1) certify the Class for purposes of settlement; (2) preliminarily appoint Plaintiffs as Class Representatives for purposes of settlement; (3) preliminarily appoint the undersigned counsel as Class Counsel for purposes of settlement; (4) preliminarily approve the Settlement as set forth in the Settlement

Agreement; (5) approve the form and manner of Notice of the Settlement to the Class; and (6) set a hearing date for Final Approval of the proposed Settlement.

Dated:  October 31, 2023                    Respectfully submitted,

*/s/ Patrick Montoya*
Patrick Montoya (FL Bar No. 524441)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
201 Sevilla Avenue, Suite 200,
Coral Gables, FL 33134
Phone: 866.252.0878
pmontoya@milberg.com

Jonathan B. Cohen (FL Bar No. 27620)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
Phone: (813) 699-4056
jcohen@milberg.com

Gary M. Klinger (pro hac vice forthcoming)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

Daniel K. Bryson (pro hac vice forthcoming)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street,
Raleigh, NC 27603
Phone: 866.252.0878
dbryson@milberg.com

Jacob R. McManamon
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
jmcmanamon@milberg.com

*Attorneys for Plaintiffs and Class Members*

-29-