# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| THOMAS HODGES, HALEYRAE CANNELL, DANIELLE BENEDICT, CHRISTOPHER BRITTON, XE DAVIS, AND EMILY HOZA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC.,<br><br>    Defendant. | Case No. 1:23-cv-24127-BB |

**DECLARATION OF JONATHAN B. COHEN IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
<u>**CLASS ACTION SETTLEMENT**</u>

I, JONATHAN B. COHEN, declare as follows:

1.      I am over 18 years of age, and I have personal knowledge of the facts stated herein.

2.      I am a partner in the law firm of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), I am counsel for Plaintiffs Thomas Hodges, HaleyRae Cannell, Danielle Benedict, Christopher Britton, Xe Davis, and Emily Hoza (collectively, "Plaintiffs") and putative Settlement Class Members in this action.

3.      I am fully familiar with the facts alleged herein as well as the pleadings and proceedings in the above-referenced action.

4.      If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

1

5.     I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").

### Putative Class Counsel's Experience

6.     Plaintiffs' Counsel here is "qualified, experienced, and generally able to conduct the proposed litigation." *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 339 (1977). Putative Class Counsel are also well qualified to represent the Settlement Class, as we have extensive experience in data privacy and consumer class actions.

7.     Milberg has decades of experience handling complex class actions involving consumer protection and privacy cases. The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, and Super Lawyers, and have held – and currently hold – leadership positions in numerous and significant consumer protection-related class actions and multi-district litigation across the country, including, but not limited to, *Clark v. Lumber Liquidators*, Case No. 1:15-cv-00748 (N.D. Ga.); *Floyd v. American Honda Motor Co., Inc.*, Case No. 18-55957 (C.D. Cal; 9th Cir. Court of Appeals); *Anderson v. Ford Motor Co.*, Case No. 6:2017-cv-03244 (W.D. Mo.); *Berman v. General Motors*, Case No. 18-cv-14371 (M.D. Fla.); *In re: Blackbaud, Inc., Customer Data Breach Litigation*, Case No.: 3:20-mn-02972-JMC, MDL No. 2972 (D.S.C.); *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 2:19-md-02921-BRM-ESK (D.N.J.); *In re Elmiron Products Liability Litigation*, MDL No. 2973 (D. N.J.); *Glenn v. Hyundai Motors America*, Case No. 8:15-cv-02052 (C.D. Cal.); *Hungerman v. Fluidmaster, Inc*., Case No. 1:14-cv-10257 (W.D. Penn.); and *O'Keefe v. Pick Five Imports, Inc.,* Case No. 8:18-cv-01496 (M.D. Fla.). Additional representative cases are detailed in the firm resume and firm biography, attached hereto as **Exhibits A-1** and **A-2**, respectively.

8.      Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[1]  Milberg has been instrumental in obtaining precedent-setting decisions at every level, including at the United States Supreme Court.[2]  The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg has more than 80 attorneys and has offices across the U.S. and the European Union.

9.      I became licensed to practice law in the State of Florida in 2006 and have at all times been a member in good standing.  In addition to being admitted to practice in the state courts of Florida, I am admitted to practice in the U.S. District Court for the Southern District of Florida, U.S. District Court for the Middle District of Florida, U.S. District Court for the Northern District of Illinois, U.S. District Court for the Western District of Wisconsin, U.S. District Court for the District of Colorado, and U.S. Courts of Appeals for the First, Fifth, and Eleventh Circuits.

10.     The entirety of my law practice since being admitted to the Florida Bar in 2006 has been spent prosecuting class actions, including, *inter alia*, state and federal consumer class actions against banks, mortgage companies, debt collectors, retailers, and insurance companies alleging violations of the Telephone Consumer Protection Act, the Fair Credit Reporting Act, and the Florida Deceptive and Unfair Trade Practices Act, amongst others.  I have also prosecuted class actions involving data breaches, privacy violations, defective products, deceptive products,

---

[1] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[2] *See* https://milberg.com/precedent-setting-decisions/page/3/.

breaches of contract, employment discrimination, illegal taxation, and the force placement of insurance.

11.     I have been appointed as class counsel by courts in multiple cases, including the following representative cases: *Parris v. Meta Platforms, Inc.*, Case No. 2023LA000672 (Cir. Ct. DuPage Cty., July 3, 2023); *Boone, et al. v. Snap, Inc.*, Case No. 2022LA000708 (Cir. Ct. DuPage Cty., Aug. 8, 2022); *Black-Brown v. Terminix Int'l Co. Ltd. Partnership*, Case No. 16-cv-23607 (S.D. Fla.); *Preman v. Pollo Operations, Inc.*, Case No. 16-cv-00443 (M.D. Fla.); *Zyburo v. NCSPlus, Inc.*, Case No. 12-Cv-6677 (S.D.N.Y.); *Swift v. Bank of America Corp., et al.*, No. 14-cv-01539 (M.D. Fla.); and *Ownby v. Citrus County, Florida*, Case No. 2004-CA-1840 (Fla. 5th Cir., Citrus County).

12.     In addition, I have led or participated in the prosecution of numerous class actions, including the following representative cases:

- *Taylor v. Ally Financial Inc.*, Case No. 19-cv-01561-AT (N.D. Ga.)
- *In re: Amla Litigation*, Case No. 16-cv-6593 (S.D.N.Y.)
- *Ansley v. Comcast*, Case No. 17-cv-00087-CAR (M.D. Ga.)
- *Peterson v. Apria Healthcare Group*, Case No. 19-cv-00856 (M.D. Fla.)
- *Skeen v. KAS Direct, LLC*, Case No. 17-cv-04119 (S.D.N.Y.)
- *Anderman, et al. v. JPMorgan Chase Bank, et al.*, Case No. 19-cv-01034 (M.D. Fla.)
- *McGrath v. Conn Appliances, Inc.*, Case No. 19-cv-01930 (S.D. Tex.)
- *Creech v. Emerson Climate Technologies, Inc.*, Case No. 15-cv-00014 (S.D. Oh.)
- *Nash v. DirecTV, LLC*, Case No. 19-cv-09032 (C.D. Cal.)
- *Dixon v. Mississippi Title Loans, Inc.*, Case No. 17-cv-02486 (N.D. Ga.)
- *Economakis v. Butler & Hosch, P.A.*, Case No. 13-cv-00832 (M.D. Fla.)
- *Etter v. Blue Cross & Blue Shield of Fla.*, Case No. 17-004530 (Fla. 6th Cir., Pinellas Cty.)
- *Bush v. Ford Motor Credit Co., LLC*, Case No. 18-cv-02328 (N.D. Tex.)
- *Friedman v. Genworth Life Insur. Co.*, Case No. 18-cv-1094 (M.D. Fla.)
- *In re: Google Plus Profile Litigation*, Case No. 18-cv-06164 (N.D. Cal.)
- *Gregware v. Scotts Miracle-Gro Co.*, Case No. 13-cv-24581 (S.D. Fla.)
- *Williams v. Gulf Coast Consultants, LLC*, Case No. 19-cv-01659 (N.D. Fla.)
- *Black-Brown v. Terminix Int'l Co. Ltd. Partnership*, Case No. 16-cv-23607 (S.D. Fla.)
- *Preman v. Pollo Operations, Inc.*, Case No. 16-cv-00443 (M.D. Fla.)
- *Zyburo v. NCSPlus, Inc.*, Case No. 12-Cv-6677 (S.D.N.Y.)
- *Swift v. Bank of America Corp., et al.*, No. 14-cv-01539 (M.D. Fla.)

- *Ownby v. Citrus County, Florida*, Case No. 2004-CA-1840 (Fla. 5th Cir., Citrus Cty.)
- *Harrison v. Winn-Dixie Stores, Inc.*, Case No. 15-cv-00676 (M.D. Fla.)
- *Factor v. Hooters of America, LLC*, Case No. 18-cv-00792 (N.D. Ga.)
- *Price, et al. v. L'Oreal USA, Inc.*, Case No. 17-cv-00614 (S.D.N.Y.)
- *Braun v. Mediant Communications, Inc.*, Case No. 19-cv-62563 (S.D. Fla.)
- *Melamed v. Autonation, Inc.*, Case No. 16-006560 (Fla. 17th Cir., Broward Cty.)
- *Griffith v. Mercedes-Benz Financial Services USA*, Case No. 18-cv-01239 (M.D. Fla.)
- *Johnston v. Nationstar Mortgage LLC*, Case No. 14-cv-00103 (D. Nev.)
- *Parks, et al. v. Subaru of America, Inc.*, Case No. 15-cv-22870 (S.D. Fla.)
- *Guidry v. Penn Credit Corp.*, Case No. 19-cv-01936 (M.D. Fla.)
- *Pieterson v. Wells Fargo Bank, N.A.*, Case No. 17-cv-02306 (N.D. Cal.)
- *Riley v. Premium Destinations, LLC*, Case No. 18-cv-02017 (M.D. Fla.)
- *Nelson v. Roadrunner Transportation Systems, Inc.*, Case No. 18-cv-07400 (N.D. Ill.)
- *Hunter v. SLM Corp.*, Case No. 19-cv-00760 (E.D. Va.)
- *Blahous v. Sarrell Regional Dental Center*, Case No. 19-cv-00798 (M.D. Ala.)
- *Snover v. Publix Super Markets, Inc.*, Case No. 15-cv-02434 (M.D. Fla.)
- *Harris, et al. v. Nortek Global HVAC LLC*, Case No. 14-cv-21884 (S.D. Fla.)
- *Stojanovic v. Select Portfolio Servicing, Inc.*, Case No. 16-cv-01373 (M.D. Fla.)
- *Toldi v. Hyundai Capital America*, Case No. 16-cv-01877 (D. Nev.)
- *Walker v. Allstate Property; Casualty Insur. Co.*, Case No. 19-cv-00701 (N.D. Ala.)
- *Richardson v. Progressive American Insur. Co.*, Case No. 18-cv-00715 (M.D. Fla.)
- *Relf v. State Farm Mutual Auto Insur. Co.*, Case No. 18-cv-00240 (M.D. Ga.)
- *Philips v. Garrison Property & Casualty Insur.*, Case No. 19-cv-01727 (N.D. Ala.)
- *Walker v. Alta Colleges, Inc., et al.*, Case No. 09-cv-00894 (W.D. Tex.)

13.     I have also successfully litigated privacy class actions through class certification. *See Zyburo v. NCSPlus, Inc.*, Case No. 12-cv-6677 (S.D.N.Y. Sept. 16, 2014) (where Mr. Cohen successfully argued for certification of an opposed class consisting of all persons in the United States whose cellular telephones were called by the defendant in violation of the TCPA, which was certified and subsequently settled on a class basis for $1,800,000).

14.     I also served as counsel for the court-appointed receiver in the Ponzi scheme-related matter of *Wiand v. Wells Fargo Bank, et al.*, Case No. 8:12- cv-557-T-27EAJ (M.D. Fla.).

15.     In short, I and my partners at Milberg have substantial experience handling a variety of consumer class actions, including those pertaining to data privacy and security cases, including some of the largest data privacy litigation in the United States. *See, e.g., In re: Blackbaud Data*

*Privacy* MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a major privacy involving millions of consumers).

## Litigation Background

16.     In or around March 2023, my law firm contacted Defendant GoodRx Holdings, Inc. ("Defendant" or "GoodRx") and advised that we had been retained by approximately 2,800 GoodRx customers, including Plaintiffs, and that each intended to pursue individual arbitration against GoodRx for violating state and federal wiretapping statutes, consumer protection laws, and common law privacy rights by allegedly intercepting and sharing Plaintiffs and Class Members' personal and health information – without their consent – with third parties through its implementation and usage of Internet tracking technologies supplied by third parties, including pieces of code known as SDKs (defined below) and tracking pixels that were installed on Defendant's website GoodRx.com ("Website").  GoodRx denied each of the alleged violations.

17.     Before and after contacting GoodRx regarding this matter, my firm researched and investigated the legal theories, claims, and potential damages to be pursued against GoodRx. Following our investigation, my firm reached out to GoodRx to discuss whether it was interested in scheduling a mediation in order to explore the potential resolution of all of Milberg's clients' claims.

18.     GoodRx's counsel subsequently communicated to Milberg that GoodRx was interested in scheduling a mediation to discuss the potential resolution of Milberg's clients' claims. As a result, a full-day mediation was scheduled and held on August 11, 2023 with an experienced and highly reputable mediator, Bennett G. Picker, Senior Counsel of Stradley Ronon, and the Parties exchanged information.  At the conclusion of this lengthy and contentious mediation session, the Parties did not reach a settlement.  As a result, a second mediation session was held

and multiple phone conferences occurred between the Parties – all facilitated by the mediator. Ultimately, the Parties agreed upon a term sheet for the framework of a class action settlement and agreed to continue negotiating the details of a class settlement.

19.     Following agreement regarding the content of the term sheet, the Parties continued negotiating the details of this class action settlement and, without delay, proceeded to draft, finalize, and execute the Settlement, Notice and Claim Forms, as well as the motion for preliminary approval submitted to the Court.

20.     Plaintiffs' Counsel worked with the putative Class Representatives throughout the process of preparing and litigating this matter, each Class Representative has been an active participant throughout the process, and none of the Class Representatives have conflicts with the Settlement Class.

21.     The Class Complaint filed with this Court is brought on behalf of a putative class consisting of all natural persons in the United States who used any website, app, or service made available by or through GoodRx at any point prior to October 27, 2023.  Within their Class Complaint, Plaintiffs allege (1) Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; (2) Invasion of Privacy Under Common Law – Intrusion Upon Seclusion; (3) Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*; (4) Invasion of Privacy Under California's Constitution; (5) California Common Law Invasion of Privacy – Intrusion Upon Seclusion; (6) Violation of the Unfair Competition Law – Unfair and Unlawful, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (7) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.06; (8) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10; (9) Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.101; (10) Violation of the

7

Confidentiality of Medical Information Act, Cal. Civ. Code § 56.36; (11) Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code. §§ 1750, *et seq.* ("CLRA"); (12) Violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18. Pa. C.S. § 5725; (13) Violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat. §§ 934.01, *et seq.*; (14) Invasion of Privacy Under New Jersey's Constitution; (15) Violation of New York Civ. Rights Laws §§ 50, 51; (16) Violation of the Security Breach and Notification Act, § 12:18 (The New York SHIELD Act); (17) Violation of New York General Business Law § 349; (18) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. §§ 505/1, *et seq.*; (19) Negligence Per Se; (20) Common Law Negligence; and (21) Unjust Enrichment/Quasi-Contract and seek an order for statutory, actual, compensatory, consequential, punitive, and nominal damages, declaratory relief, equitable relief, injunctive relief, litigation expenses and attorneys' fees, and such other relief as the Court deems just and proper.

22.     After a great deal of contentious, arm's-length negotiations, the Parties agreed on a Settlement Class defined as: all natural persons in the United States who used any website, app, or service made available by or through GoodRx at any point prior to October 27, 2023 (the "Class Period").  It is intended that the Class include both minors and adults and all will be treated the same under the terms of the Settlement.  Excluded from the Settlement Class are: (1) Defendant; (2) Defendant's affiliates; (3) Defendant's parents; (4) Defendant's subsidiaries; (5) Defendant's officers; (6) Defendant's directors; (7) any persons or entities who or which validly exclude themselves from the Settlement Class (the "Opt-Outs"); (8) the judges presiding over this matter; and (9) the clerks of said judges.

23.     GoodRx has communicated to Plaintiffs' counsel that the Settlement Class includes millions of persons nationwide during the Class Period, including an estimated 16.7 million persons for whom GoodRx has email addresses that can be used for direct notice.

24.     Under the negotiated terms of the Settlement Agreement, attached hereto as **Exhibit A-3**, GoodRx will contribute $13 million to a non-reversionary common fund (the "Settlement Fund") with pre-funding in the amount of $500,000 to be paid into an escrow account within fourteen (14) days after the entry of the Preliminary Approval Order for the purpose of paying Notice and Settlement Administration Costs incurred prior to entry of the Final Approval Order and Final Judgment.

25.     Per the terms of the Settlement Agreement, an amount of twelve million five hundred thousand dollars and no cents ($12,500,000), minus the amount of the Attorneys' Fees and Expenses Award that is approved by the Court will be paid by Defendant to the Settlement Fund and deposited in an escrow account within fourteen (14) days of the entry of the Final Approval Order.

26.     Pursuant to the terms of the Settlement Agreement, the Settlement Fund will be used to pay settlement benefits to the Settlement Class, as well as to pay for settlement administration and any Attorneys' Fees and Expenses Award granted by the Court.

27.     Under the terms of the Settlement, in exchange for the Settlement benefits, Settlement Class Members will release as against Defendant and any and all of the Released Parties (as defined in the Settlement Agreement), any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being

known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, or are based upon or connected to, or relate in any way to the Data Disclosure or Defendant's use of Pixels, SDKs, cookies, APIs, or any similar technologies, or that were or could have been asserted in the Litigation (the "Release").

28.     However, the Release does not include any claims regarding the enforcement of the Settlement Agreement.

29.     After discussing the parameters of the Notice plan and requesting and reviewing an estimate, the Parties agreed to have Kroll serve as the Settlement Administrator.

30.     Under the terms of the Notice plan, within fourteen (14) days after the entry of the Preliminary Approval Order, Defendant will provide Kroll with the names and email addresses known to Defendant for the Settlement Class Members.  Within forty-five (45) days following entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will email the Email Notice and the Claim Form to all Settlement Class Members for whom an email address is available.

31.     Further, under the terms of the Notice plan, by no later than the Notice Date, the Settlement Administrator will also commence the Publication Notice.

32.     The Notice plan also requires the Settlement Administrator to be responsible for creating a Settlement Website and maintaining and updating the website throughout the claim period, with the forms of Short (Email) Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, the operative Complaint, and any other materials agreed upon or requested by the Court.

33.     Under the terms of the Settlement Agreement, Settlement Class Members will be able to submit Claim Forms through the mail or electronically via the Settlement Website if they choose to do so.

34.     The timing of the claims process has been structured to ensure that all Settlement Class Members will have adequate time to review the terms of the Settlement, submit a Claim Form, and decide whether or not to opt-out or object.

35.     Under the terms of the Settlement Agreement, Settlement Class Members will have sixty (60) days from the Notice Date to submit their Claim Forms to the Settlement Administrator, either by mail or through the Settlement Website.

36.     It will be the responsibility of the Settlement Administrator to determine whether a Claim Form submitted by a Settlement Class Member is approved.  The Administrator may contact any person who submits a Claim Form in order to obtain additional information necessary to verify the Claim Form.

37.     Both Class Counsel and Defendant's Counsel shall be entitled to challenge the Settlement Administrator's acceptance or rejection of a Claim Form submitted by a Settlement Class Member, and the Settlement Administrator shall follow any joint decisions of Class Counsel and Defendant's Counsel as to the validity of any disputed submitted Claim Form.  If and when Class Counsel and Defendant's Counsel disagree as to the validity of a submitted Claim Form, the Settlement Administrator will resolve the dispute and the Claim Form will be treated in the manner designated by the Settlement Administrator.

38.     All approved claims will be paid within forty-five (45) days of the Effective Date.

39.     All Settlement Class Members who want to opt out of the Settlement will have until sixty (60) days after the Notice Date to provide written notice that they would like to be excluded

from the Settlement Class.  Each Settlement Class Member wanting to opt out of the Settlement Class must individually sign and timely submit written notice of such intent ("Request for Exclusion") to the designated Post Office box established by the Settlement Administrator.  The written notice must clearly identify the individual Person wishing to opt out of the Settlement Class and must manifest the Person's intent to opt out of the Settlement Class.  The Settlement Administrator will be responsible for creating a dedicated email address to receive exclusion requests electronically.  Any request to be excluded that does not include all of the above-listed information, or that is sent to an address other than that designated in the Notice, or that is not postmarked or received by the Objection/Exclusion Deadline, or which otherwise does not comply with the requirements set forth in the Settlement Agreement, shall be invalid, and the person(s) submitting such a request shall remain a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by the Settlement Agreement, if approved.

40.     All Settlement Class Members who want to object to the terms of the Settlement Agreement must do so in writing and must send any objections to the Settlement Administrator within sixty (60) days from the Notice Date.  The written objection must include: (i) the Settlement Class Member's full name, current address, telephone number, and email address; (ii) the Settlement Class Member's original signature; (iii) proof or an attestation that the Settlement Class Member is a member of the Settlement Class; (iv) whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) a statement of the legal and factual basis for the Objection; (vi) copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identification of all counsel representing the Settlement Class Member, if any; (viii) the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative,

if any, along with documentation setting forth such representation; and (ix) a list, including case name, court, and docket number, of all other cases in which the objecting Settlement Class Member and/or his/her counsel has filed an objection to any proposed class action settlement in the past three (3) years.

41.     Further, if the objecting Settlement Class Member intends to appear at the Final Approval Hearing at his/her own expense, either with or without counsel, he/she must file a notice of appearance with the Court and serve the notice on Class Counsel and Defendant's Counsel by the Objection Deadline.

42.     If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify: (i) the attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing by including counsel's name, address, phone number, email address, the state bar(s) to which counsel is admitted, as well as associated state bar numbers; (ii) any witnesses he or she may seek to call to testify (including the Settlement Class Members) at the Final Approval Hearing; and (iii) all exhibits he or she intends to seek to introduce into evidence.

43.     Significantly, the Parties did not discuss the payment of attorneys' fees, litigation costs and expenses ("Fee Award" as defined in the Settlement Agreement) at any point or in any capacity during Settlement negotiations.  Only after the substantive terms of the Settlement had been agreed upon did Class Counsel address fees for the purpose of limiting its petition for attorneys' fees to no more than thirty-five percent (35%) of the Settlement Fund, plus the reimbursement of Class Counsel's expenses.

44.     Class counsel's attorneys' fees and expenses will be paid from the Settlement Fund upon any Fee Award by the Court.  If the Fee Award is lowered or the Settlement is disapproved

by a final non-appealable order, any funds paid to Class Counsel for attorneys' fees and expenses will remain in the Settlement Fund for distribution to Settlement Class Members. Significantly, the Settlement is not conditioned upon any Fee Award to Class Counsel, and any objection to or appeal from such a Fee Award will not affect the finality of the Settlement or the judgment of dismissal.  Plaintiffs will submit a request for a Fee Award at least fifteen (15) days prior to the Objection/Exclusion Deadline.

45.    As set forth above in paragraphs 7, 11, 12, and 13, Plaintiffs' counsel have extensive experience in data privacy and consumer class actions and the results obtained by this Settlement further confirm counsel's adequacy.

46.    At the beginning of our investigation, my law firm conducted extensive research regarding Plaintiffs' claims, including the technical aspects of the GoodRx Platform and its privacy implications. The Parties only entered into the Settlement after both sides were fully apprised of and had assessed the facts, risks, and obstacles involved with protracted litigation.

47.    Only after performing our research and investigation did Milberg undertake the significant task of retaining over 2,800 potential claimants to pursue individual arbitrations against GoodRx.  This endeavor included vetting each client to ensure he or she had potential claims against GoodRx.  After my firm retained over 2,800 claimants, we contacted GoodRx to advise that the claimants would be filing individual arbitrations regarding GoodRx's alleged violations of state and federal wiretapping and privacy laws in connection with GoodRx's use of tracking technology across the GoodRx Platform.  Class Counsel and GoodRx then engaged in discussions about the merits of Plaintiffs' claims.

48.    The culmination of this process led to an agreement to mediate the case with respected mediator Bennett G. Picker.  Prior to mediation, the Parties fully briefed the relevant

issues, including the strengths and weaknesses of their cases as to the merits and class certification. The mediation lasted two full days over the course of several weeks.  It was highly adversarial, non-collusive, and conducted at arm's length and resulted in a term sheet.

49.     Even after reaching an agreement on the central terms of any settlement, the Parties continued negotiating and drafting the finer points of the Settlement Agreement over a period of months until the agreement before this Court was finally reached.  Given this fact, in combination with counsel's extensive experience in privacy litigation and class actions, the Parties were able to enter into settlement negotiations with a comprehensive understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

50.     Based upon Plaintiffs' counsel's experience in this practice area and in similar cases, it is the position of Plaintiffs' counsel that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.  Plaintiffs' counsel also believe that the benefits of the Settlement far outweigh the delay and considerable risk of proceeding to trial.

51.     Per the Notice plan, the Settlement Administrator will provide Notice to the Settlement Class via email to those Settlement Class Members for whom GoodRx has email addresses and via publication Notice through online banner advertisements, and a Settlement Website where Settlement Class Members can view relevant documents, submit their claims, or get answers to frequently asked questions.

*     *     *     *     *

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid

that I verily believes the same to be true.  Executed in Tampa, Florida on this 27th day of October,

2023.

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

*/s/ Jonathan B. Cohen*
Jonathan B. Cohen
3833 Central Ave.
St. Petersburg, FL 33713
(813) 699-4056
jcohen@milberg.com

*Attorney for Plaintiffs and the Putative*
*Settlement Class*

# EXHIBIT A-1



# Who We Are

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent national mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer, and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations—wherever they operate.

www.milberg.com

# Practice Areas

**Antitrust & Competition Law**

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

**Complex Litigation**

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for business and plaintiffs outside of class action context, business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property. The repeated success of our attorneys against well-funded adversaries with top-tier counsel has established Milberg as the go-to firm for complex litigation.

**Consumer Products**

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims, unfair trade practices, and notable product cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

**Consumer Services**

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy. We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

### Class Action Lawsuits

Milberg pioneered federal class action litigation is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

### Dangerous Drugs & Devices

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits, at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most powerful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

### Data Breach, Cyber Security & Biometric Data Lawsuits

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cyber security threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

### Environmental and Toxic Torts Litigation

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

### Finance & Insurance Litigation

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

**Public Client Representation**

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

**Securities Litigation**

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

**Whistleblower & Qui Tam**

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients.Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring impressive victories against companies guilty of outrageous behavior."*

- Forbes

*" A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers"*

- New York Times

# Recent Leadership Roles

In re: Google Play Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)
In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973
In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation
In re: Blackbaud Data Privacy MDL No. 2972
In re: Paragard IUD Products Liability Litigation MDL No. 2974
In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation MDL No. 3009
In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation
In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

In re: Zicam
In re: Guidant Corp. Implantable Defibrillators
In re: Ortho Evra
In re: Yaz
In re: Kugel Mesh
In re: Medtronic Sprint Fidelis Leads
In re: Depuy Pinnacle
In re: Stand 'N Seal
In re: Chantix
In re: Fosamax
In re: Olmesartan
In re: Onglyza (Saxagliptin) And Kombiglyze XR
In re: Risperdal and Invega Product Liability Cases

In re: Mirena
In re: Talcum Powder
In re: Incretin
In re: Chantix
In re: Regla
In re: Levaquin Litigation
In re: Zimmer Nexgen Knee
In re: Fresenius Granuflo
In re: Propecia
In re: Transvaginal Mesh
In re: Fluoroquinolones
In re: Depuy Pinnacle

# Notable Recoveries

$3.2 Billion Settlement - In re: Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

$4 Billion Settlement - In re: Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

$1.14 Billion Settlement - In Re: Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

$1 Billion-plus Trial Verdict - Vivendi Universal, S.A. Securities Litigation

$1 Billion Settlement - NASDAQ Market-Makers Antitrust Litigation

$1 Billion Settlement - W.R. Grace & Co.

$1 Billion-plus Settlement - Merck & Co., Inc. Securities Litigation

$775 Million Settlement - Washington Public Power Supply System Securities Litigation

# Locations

CHICAGO
227 W. Monroe Street Suite, Suite 2100
Chicago, Illinois 60606

NEW JERSEY
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

NEW YORK
100 Garden City Plaza
Garden City, New York 11530

NORTH CAROLINA
900 W. Morgan Street
Raleigh, North Carolina 27603

PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

SEATTLE
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

WASHINGTON D.C.
5335 Wisconsin Avenue NW , Suite 440
Washington, D.C., 20015





www.milberg.com

# **EXHIBIT A-2**



Firm Resume



**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC ("MILBERG") IS A LEADING GLOBAL PLAINTIFFS' FIRM,** successfully pioneering and litigating complex litigations in the following practice areas: class actions, antitrust and competition law, securities fraud, consumer protection, cyber security and data breach litigation, financial and insurance litigation, environmental law, securities litigation, and product liability. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride themselves on providing stellar service and achieving extraordinary results for their clients.

Milberg was founded in 1965, taking the lead in landmark cases that have set groundbreaking legal precedents and prompted changes in corporate governance benefiting shareholders and consumers. For more than 50 years, the firm has protected victims' rights, recovering over $50 billion in verdicts and settlements. Milberg was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and became widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.

Milberg has offices in New York, California, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Kentucky, Tennessee and Puerto Rico.  Recently, Milberg has opened offices in the United Kingdom, Portugal, and Germany. In addition, Milberg has expanded into South America, with primary emphasis in Brazil.

The firm's reputation has been built by successfully taking on challenging cases across a spectrum of practice areas for the past half-century. From resolving business disputes to proving antitrust conspiracies, Milberg is equipped to handle complex, high-stakes cases at any stage of the litigation process.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, and Super Lawyers, among others.

**MILBERG** is comprised of more than 80 attorneys across the country. Included here are those attorneys who have held leading roles in successful consumer class actions nationwide.

**GREG COLEMAN** is a managing partner at Milberg and has 30 years of trial and appellate experience. Greg received his B.A. with highest honors and distinction from Jacksonville State University in 1986. He attended The University of Tennessee College of Law, graduating in 1989. In addition to distinguishing himself academically, Greg was a member of the National Trial Moot Court Team, was the recipient of the American Jurisprudence Award for National Trial Team and was listed in Who's Who Among Rising Young Americans. In addition, the College of Law bestowed upon Greg the honor of inclusion into the National Order of Barristers for outstanding oral advocacy and trial skills. Greg's practice focuses on class actions, products liability, medical malpractice, personal injury, complex multi-district litigation, toxic torts, premises liability, ERISA, ERISA class actions, drug and medical device litigation, and workers' compensation. He was co-lead counsel in a defective products case against Electrolux in which he and co-counsel successfully obtained a settlement on behalf of a class of more than one million members regarding defectively manufactured dryers. The settlement resulted in an expected utilization settlement value of over $35 million. Greg was co-lead counsel in a series of automobile defect class actions against General Motors in Florida, Illinois, and California, in which he and co-counsel successfully obtained a $42 million settlement on behalf of a class of 1.6 million consumers regarding excessive oil consumption. He was lead trial counsel in an ERISA class action against AK Steel Corporation in which he successfully obtained a $178.6 million settlement on behalf of a class of over 3,000 retirees of AK Steel's Butler Works Plant in Pennsylvania in 2011.

**DANIEL K. BRYSON** is a managing partner at Milberg and is one of the nation's most respected and experienced attorneys in the area of consumer class actions and mass torts. Dan also has significant experience working with attorneys, funders, and other partners on international litigation projects in the Courts in Amsterdam, the United Kingdom, Belgium, France, Spain and Portugal, among others. For over 32 years, Dan has focused his practice on complex civil litigation, successfully representing thousands of consumers in a wide variety of defective product suits, class actions, and various mass torts and recovering more than $1.25 billion for his clients in numerous states throughout the country. He frequently collaborates with other attorneys in order to assemble the most effective team possible. Dan has been lead or co-lead counsel in numerous national class actions and MDLs. Dan is a frequent lecturer and writer on a variety of consumer class action, insurance, and mass tort related disputes. He has been quoted by a variety of media outlets over the years including the Wall Street Journal, Washington Post, New York Times, Law360, and Lawyers Weekly to name a few. He has been named as a member of the Legal Elite and Super Lawyers in North Carolina on numerous occasions. He has been awarded the designation of one of the Top 25 lawyers in Raleigh by Charlotte Magazine for a number of years including 2020. Dan is current serving as President of Public Justice, a nationwide public interest law firm. Dan is also an adjunct professor at Campbell Law School in Raleigh, NC where he teaches "Introduction to Class Actions and Multi-district litigation."

**R. GLENN PHILLIPS** is a managing partner at Milberg and has been practicing law since 1984 and has tried more than 100 civil jury trials. He is a managing partner at Milberg, and director of the firm's global operations. Mr. Phillips has received the highest rating from Martindale-Hubbell (5.0 out of 5.0) and is an AV rated attorney.  Mr. Phillips started his legal career representing insureds on behalf of insurance companies, handling primarily wrongful death and product liability cases. In the mid-1990s, he began representing those injured by others, corporations, or by defective drugs and devices. Since then, he has been actively involved in the aggregation and prosecution of large groups of individual clients injured by corporate neglect.   Mr. Phillips is a firm believer in the phrase, "leveling the playing field," allowing ordinary citizens to have access to justice through the courts and to being guided by experienced, aggressive, and ethical counsel.  Mr. Phillips is a member of the Washington state bar. He is also a member of the American Association for Justice, an Eagle member of the Washington Association for Justice, and the non-profit organization, Public Justice. He is a frequent speaker before such national groups as The National Trial Lawyers, American Association for Justice, and Mass Torts Made Perfect, as well as various state trial lawyer groups.

**MARC D. GROSSMAN** is a managing partner at Milberg.  Since beginning his law career in 1993, Mr. Grossman has focused primarily on representing large groups of plaintiffs against common defendants. In 1999, after six years of practicing plaintiff's personal injury law in state and federal courts in New York and New Jersey, Mr. Grossman founded the law firm of Sanders and Grossman, P.C. specifically to pursue claims on behalf of medical providers. This firm, and its successors, grew dramatically under his leadership, and now represent thousands of medical providers litigating claims against insurance companies, and thousands of injury victims.

Mr. Grossman had a vision of uniting the medical profession by affording them the opportunity to litigate nominal claims that were being written off by medical providers as uncollectible and had not previously been practical for most attorneys to litigate. By coordinating discovery, utilizing the most up-to-date case management technology, and recruiting top office administrators and trial attorneys, Mr. Grossman's firm was able to greatly improve efficiencies throughout the litigation process and ultimately the viability of collecting these claims. By filing over 100,000 individual lawsuits, Mr. Grossman's firms garnered the attention of the insurance industry and the medical profession in New York eventually leading to a series of mass settlements on behalf of his clients and recoveries in the hundreds of millions of dollars. In just 2006 and 2007, Mr. Grossman's firm personally litigated, negotiated, and recovered over 100 million dollars for his medical provider clients. The unique experience Mr. Grossman garnered as an innovator and leader in the mass settlement of medical claims and mass torts made him a leader in his field in negotiating and obtaining large recoveries.

Most recently, Mr. Grossman has represented hundreds of injured clients in lead paint litigations, asbestos litigations, mold litigations, and thousands of victims of defective drugs and products. Mr. Grossman received recognition litigating Vioxx cases in New Jersey Superior Court where he served as a liaison to the media as a member of the Vioxx Plaintiffs' Steering Committee's ("PSC's") Public Relations Committee, and as a liaison for the Committee to many financial institutions and governmental agencies, offering a common voice for the hundreds of attorneys

3

handling such cases and the tens of thousands of victims they represent. These efforts and the hard work of many other relentless attorneys ultimately led Merck to agree to one of the largest Civil Settlements in American History for $4.85 Billion.

In December 2010, Mr. Grossman was nominated and invited to join both The Board of Directors of the New York State Trial Lawyers Association and the Executive Committee of Association of Trial Lawyers of America. Mr. Grossman is also a member of the Mass Tort Trial Lawyers Association and the Leaders Forum of the American Association of Justice.

Mr. Grossman has actively litigated for other large groups of plaintiffs in the following matters: *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*; *In re N.Y. Bextra and Celebrex Prod. Liab. Litig.* in New York's Supreme Court, New York County; Case No. 273, *In re Bextra and Celebrex Litig.*, Superior Court of New Jersey, Atlantic County; Oxycontin Litigation in New York's Supreme Court, Richmond County; MDL-1708, *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.* in Minnesota; MDL-1699, *In re Bextra and Celebrex Mktg., Sales Practices and Prods. Liab. Litig.* in California; MDL-1742, *In Re Ortho Evra Prods. Liab. Litig.* in Ohio; MDL-1789, *In re Fosamax Prods. Liability Litig.* in New York; and MDL-1804, *In Re Stand 'N Seal, Prods. Liability Litig.*, where one of Mr. Grossman's firms serves on the PSC. One of Mr. Grossman's firms is also a court-appointed member of the PSC in the following mass tort litigations: *In Re Avandia*, *In Re Chantix, In Re Zicam*, *In Re Zimmer Knee*, *In Re Fosamax*, and the New Jersey state court coordination of Levaquin. One of Mr. Grossman's firms is co-lead in the NY Chantix Coordination and the New Jersey Reglan Coordination, as well as Risperdal in California, all Transvaginal Mesh PSC, and Propecia coordination.

After an $8 million verdict in *Boles v. Merck* for a victim of Fosamax, Mr. Grossman, along with co-counsel, led the Trial Team in *Rosenberg v. Merck* which was the first bellwether New Jersey Trial in Atlantic County Superior Court. Mr. Grossman has become well known as a speaker and host of approximately 20 educational seminars designed to educate victims, the medical community, and other attorneys. Mr. Grossman has been quoted and has appeared in numerous local and national forums and in the media as a legal commentator and advocate of victims' rights against the corporate greed that plagues our nation. In January 2016, Mr. Grossman received the 2015 Litigator Award a significant distinction, achieved by less than 1% of all trial attorneys. This award is considered among the top honors bestowed on trial attorneys.


**ADAM EDWARDS** is a senior partner and practice leader in the Consumer Products Group at Milberg. Mr. Edwards acts as the lead attorney on many of the firm's serious personal injury cases. He also serves as a primary litigator on many of the firm's class action, multi-district litigation, and defective product cases. He attended The University of Tennessee where he received his undergraduate degree in political science and served as a field office intern for United States Senator and former Senate Majority Leader, Dr. Bill Frist. After graduating from UT, Mr. Edwards was accepted into the Juris Doctor program at the Washburn University School of Law where he was awarded an academic merit scholarship after his first year of coursework. While at Washburn, Adam excelled in oral advocacy and was selected as the President of the Moot Court Counsel on Oral Advocacy. He was also selected as a member of the Order of Barristers. He received his JD

after graduating with Dean's Honors in 2000. Adam's formal legal career started when he accepted a position as an Attorney at Husch Blackwell (formerly Blackwell Sanders) in Kansas City, Missouri in 2000. During the first four years of his legal career, Mr. Edwards successfully defended a number of well-known insurance companies and corporations in a wide range of litigation matters. Today, Mr. Edwards utilizes his extensive trial experience and diverse background to advocate for personal injury victims and consumers who have suffered damages resulting from dangerous and defective products. Mr. Edwards was selected by fellow members of the Knoxville Bar as a "Top Attorney" in CITYVIEW Magazine's annual Top Attorney's issue. He was selected as a Top Attorney for a second time in 2010. In 2017, Mr. Edwards was named one of the Top 100 Trial Lawyers by the American Trial Lawyers Association. He was also selected for membership into the Million Dollar Advocates Forum, an honor reserved for trial lawyers who have secured a settlement or verdict in excess of one million dollars.

**PEGGY J. WEDGWORTH** is a senior partner and Chair of the Antitrust Practice Group at Milberg. She was an Assistant District Attorney in Brooklyn, New York from 1986 to 1989. Since leaving the public sector in 1989, she has handled numerous securities, commodities, antitrust and whistleblower matters, and is a Super Lawyer in New York, New York since 2016 and recommended in the Legal 500 United States for 2016. Ms. Wedgworth represents defrauded investors and consumers, and she currently represents consumers in *In re Contact Lens Antitrust Litig.*, and car dealerships in an antitrust action brought against software suppliers. She actively litigated *In re Initial Public Offering Sec. Litig.* for over five years, which settled for $586 million, and *In re Merck & Co. Sec. Litig.*, which had a combined settlement totaling $1.062 billion. She also won a jury trial against R.J. Reynolds in a wrongful death tobacco case in Florida state court. Ms. Wedgworth has litigated antitrust and commodities class actions on behalf of plaintiffs including extensive experience in all aspects of pre-trial discovery in, among other cases, *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897, 1996 WL 351180 (N.D. Ill. June 24, 1996) (approving $351 million settlement); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y.) ($1,027,000,000 settlement); *In re Microsoft Litig.*, MDL 1332 (D. Md.) (consolidated class actions alleging long term unlawful maintenance of a monopoly and other anticompetitive conduct by Microsoft resulting favorable partial settlements); *In re Soybean Futures Litig.*, No. 89-7009 (N.D. Ill.) ($21,500,000 class settlement providing claiming class members/soybean futures traders a full recovery under plaintiffs' expert's formula); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act."); *Kohen v. Pac. Inv. Mgmt. Co., LLC*, No. 05-4681 (N.D. Ill.) (certified class of treasury bond futures purchasers alleging manipulation of the futures market); *Leider v. Ralfe*, No. 01-3137 (D.N.J.) (alleging price-fixing and monopolization in the diamond market by DeBeers resulting in a settlement of $250,000,000 and extensive injunctive relief); and *In re Natural Gas Commodities Litig.*, 03-6186 (S.D.N.Y.) ($101 million settlement). Ms. Wedgworth regularly speaks on topics relating to antitrust litigation, multi-district litigation and class action issues, and consumer matters. She is a member of the New York State Bar Association's Antitrust Committee, where she has served as both a speaker and panelist, and the American Bar Association, Antitrust Committee, and a member of the American Association of Justice.

5

MATTHEW E. LEE is a senior partner at Milberg and is a nationally recognized and highly regarded trial lawyer. For over 15 years, Matt has focused his practice on fighting for people in consumer class actions, employment/civil rights litigation, and other complex plaintiff's litigation. After winning a $14,000,000 judgment in a recent jury trial against IBM, the federal court judge found that "[t]his success reflects the quality of counsel who succeeded in proving claims of retaliation largely with circumstantial evidence." The jury's award was the largest ever in a retaliation, discrimination or wrongful termination case in the Western District of Washington (Seattle). Matt has also served as lead counsel in class actions and other complex cases both in North Carolina and around the country, including Co-lead Interim Class Counsel in *Edwards v. CSX Transportation, Inc.*, No. 7:18-cv-169-BO (E.D.N.C.), a case involving devastating flood damages after Hurricanes Matthew and Florence estimated damages in excess of $250,000,000, Co-lead counsel in a biometric information and privacy class action against Facebook. and another against Snapchat, and lead counsel in two class actions against IBM arising from its commission's practices. *Comin v. International Business Machines Corp.*, No. 19-cv-07261-JD (N.D. Cal.) and *Engle v. International Business Machines, Corp.*, Index No. 654556/2020 (Supreme Court of New York).

SCOTT C. HARRIS is a senior partner at Milberg Coleman Bryson Phillips Grossman LLP, and has been with the firm since its inception. Scott's practice focuses on fighting for individuals, homeowners, homeowners associations, and small businesses in complex litigation, including construction defect, mass tort, and product liability. Scott has played a key role in securing substantial verdicts and settlements in a variety of cases. For instance, he has received a multi-million dollar verdict in favor of homeowners for a developer's unfair and deceptive advertising and shoddy road construction and over a million dollar verdict in favor of homeowners whose homes were built on improperly compacted soil. Scott earned his Bachelor of Arts from Hampden-Sydney College in 2001 and his law degree from Wake Forest University School of Law in 2006. Scott was admitted to the North Carolina Bar in 2006 and to the Florida Bar in 2013. He is also admitted to practice before the United States District Court for the Eastern, Middle and Western Districts of North Carolina, the United States Court for the Middle District of Florida, and the United States Court of Appeals for the Fourth Circuit. Scott's success has been recognized by numerous professional associations. He was named a Super Lawyer in 2010, and every year since 2012. In addition, he has consistently been named a member of the Legal Elite by Business North Carolina. Scott is also an active member of several trade organizations including American Association of Justice (AAJ), North Carolina Advocates for Justice (NCAJ), Public Justice.

NICK SUCIO III is a senior partner and practice leader in the Consumer Products Group at Milberg and has extensive experience and knowledge regarding the dietary, bodybuilding, and sports supplement industry and the science behind these supplements. Nick Suciu has represented several dietary, bodybuilding, and sports supplements manufacturers and retailers and advised these clients in the areas of FDA regulatory, advertising and marketing law. Mr. Suciu is also dedicated to fighting to protect consumers from sports nutrition and dietary supplement manufacturers who intend to mislead consumers with their claims.  Mr. Suciu has filed class action lawsuits against

some of the top selling dietary supplement companies in the country, to help ensure that consumers are receiving the proper information regarding their purchases of these dietary supplements. Since focusing his practice on consumer class actions, Mr. Suciu has used his expertise in the United States Food, Drug and Cosmetic Act to litigate actions against not only dietary supplement companies, but also major food and cosmetic companies. Mr. Suciu graduated from Wayne State Law School in 2008 and also received his Masters in Business Administration from Wayne State University in 2009. From 2013 to 2018, Mr. Suciu was recognized as a "Rising Star" by SuperLawyers Magazine.

KRISTIAN RASMUSSEN is a senior partner at Milberg and has practiced law for more than 21 years, most of which have been devoted to representing plaintiffs against pharmaceutical companies and medical device manufacturers, typically involving claims consolidated in multidistrict litigation. He has represented clients on both sides of the "v," including serving as a criminal prosecutor in the U.S. Attorney's office and representing defendants in both criminal and civil litigation. Judges and peers from across the country recognize his leadership and skill as evidenced by being selected to lead complex products liability claims including being appointed Lead Counsel for *In Re: Abilify Products Liability Litigation*, MDL No. 2734; Appointed Co-Lead Trial Counsel for *In re High Sulfur Content Gasoline Products Liability Litigation*, MDL No. 1632.

MARK E. SILVEY is a partner at Milberg who acts as a lead attorney and primary litigator in many of the firm's class action and multidistrict litigation cases. During his 30-plus year legal career he has served as lead counsel in more than 100 jury trials, over 75 bench trials, and in numerous appellate cases in virtually all types of civil practice areas. He received a bachelor's degree in history from the University of Tennessee in 1984 with a concentration in medieval Japan, the Holy Roman Empire, and the 19th and early 20th century United States. Mr. Silvey also received his law degree from the University of Tennessee, where as a member of the National Trial Team, he received recognition as an Outstanding Clinic Student.

ARTHUR STOCK is a partner at Milberg who provides legal service for commercial, financial, securities, and consumer class actions. Previously he had been a shareholder at Berger Montague in Philadelphia, Pennsylvania, for over 20 years. Mr. Stock has also represented whistleblowers in *qui tam* actions in federal courts, and in administrative proceedings before the Securities Exchange Commission, the Internal Revenue Service, and the United States Tax Court. Mr. Stock was a principal litigator in numerous class actions, including: *Merrill Lynch Inc. Securities Litigation,* which resulted in a $475 million settlement on behalf of investors in Merrill Lynch securities; *Lee v. Enterprise Leasing Co.,* where class members recovered 80% of alleged damages from allegedly illegal charges Nevada airport car rentals; and *Vasco v. PHRG*, an action brought under the Consumer Telecommunications Protection Act, where Class Members recovered $5.2 million from a business that had allegedly called consumers for telemarketing purposes without obtaining prior express consent. Before he entered private practice, Mr. Stock

served as a Law Clerk to the Honorable Jackson L. Kiser, United States District Court of the Western District of Virginia.

**JENNIFER S. CZEISLER** is a partner at Milberg and graduated from Hofstra University in 1994 with a B.A. degree in psychology. After completing graduate degree work at Hunter School of Social Work (1994-95), she pursued a J.D. degree, which she earned in 1999 from the University of Miami School of Law, where she graduated *cum laude*. Ms. Czeisler was on the editorial board of the *Law Review of Psychology, Public Policy & Law* and earned numerous awards, including the CALI excellence for the Future Award, Dean's Certificate of Achievement Award, and membership in the Phi Delta Phi National Honor Society. Ms. Czeisler is admitted to practice in the State of New York and is a member of the American Bar Association, where she is committed to her *pro bono* work with the American Bar Association Commission on Legal Problems of the Elderly.  Ms. Czeisler's practice areas focus on reverse redlining and predatory lending, complex and consumer litigation

**MARTHA GEER** is a partner at Milberg and has a combination of experience that few attorneys possess and clients find invaluable. She has practiced for more than two decades as a respected litigator and appellate advocate and served for more than 13 years as a rarely-reversed appellate judge. As a trial lawyer and board-certified appellate specialist, Judge Geer is known for obtaining cutting-edge and precedent-setting victories in a diverse set of practice areas, including consumer protection, ERISA, environmental, securities, labor and employment law, antitrust and trade regulation, contingent commercial litigation, and civil rights litigation. She was first elected to the North Carolina Court of Appeals in 2002. In 2010, because of her reputation as a fair and impartial judge, she garnered strong bipartisan support that resulted in her winning re-election by a 20-point margin. During her tenure on the Court, Judge Geer heard more than 3,800 appeals, authored more than 1,350 opinions, and had her opinions reversed less than 2% of the time. She left the Court of Appeals to become a partner at Cohen Milstein Sellers & Toll LLP, a leading plaintiffs' class action firm, and founded its Raleigh office. In October 2019, she joined Whitfield Bryson LLP, now part of Milberg. Judge Geer is a highly sought-after teacher of continuing education programs for both judges and lawyers. As a trial and appellate lawyer, she has been regularly recognized in The Best Lawyers in America, most recently (2018, 2019, and 2020 eds.) in the areas of appellate practice and mass tort/class actions. Prior to joining the bench, she was selected by Business North Carolina as one of North Carolina's "Legal Elite."

**DREW HATHAWAY** is a partner at Milberg and focuses on representing consumers in complex litigation. His primary focus is on product liability and consumer protection class actions both in the United States and internationally throughout Europe. Mr. Hathaway is experienced in creating foundations and international corporations necessary to pursue collective redress abroad while navigating complex tax issues. Mr. Hathaway has extensive experience working with attorneys, funders and partners on international litigation projects in the Courts of Amsterdam, the United

Kingdom, Belgium, France, Spain and Portugal. Mr. Hathaway's international work is done with Milberg Partners LLC. Mr. Hathaway spent the first eight years of his career practicing as a defense lawyer with a primary focus on medical malpractice and commercial litigation. Mr. Hathaway has extensive trial experience and has received numerous honors as a trial attorney including recognition as North Carolina Super Lawyers Rising Stars, a peer selection for the top 2.5% of North Carolina Lawyers under the age of 40. Since 2007, Mr. Hathaway has been on the board of directors for Vidas De Esperanza. Vidas is a 501(c)(3) non-profit that provides free health care and educational opportunities to the underserved in North Carolina and in Mexico. Mr. Hathaway is a member of the Public Justice Foundation, the American Association for Justice, the North Carolina Advocates for Justice, the Wake County Bar Association and the North Carolina Bar Association.

JUSTIN G. DAY is a partner at Milberg and has been actively involved in a number of the firm's practice specialties, including the firm's class action, personal injury, and mass tort areas. In 2018, 2019, and 2020, Justin was named Top 40 Under 40 by the National Trial Lawyers Association and a Rising Star in Tennessee by Super Lawyers Magazine. Justin graduated with a bachelor's degree in honors philosophy and political science from the University of Tennessee, where he was awarded the Davis Scholarship and named the top graduate in his major. Justin then attended law school at the University of Tennessee College of Law, where he was a Green Scholar, president of the Christian Legal Society, and one of the first-ever recipients of the Jerry P. Black Jr. Student Clinic Attorney Award.

JEREMY R. WILLIAMS is a partner at Milberg and focuses on fighting for the rights of employees and consumers in complex litigation across the United States. Since joining the firm in 2014, he has prosecuted cases against some of the largest companies in the world. He has successfully litigated cases involving millions of dollars in unpaid sales commissions by tech companies, wrongful termination and discrimination actions on behalf of executives and software sales representatives, and class actions for defective products, fraudulent pricing schemes, and other unlawful conduct against numerous Fortune 500 companies. Mr. Williams has also represented property owners in lawsuits related to defective construction of residential and commercial real estate, handled numerous complex business disputes, and resolved lawsuits against major universities for violations of Title IX that led to the reinstatement of women's varsity sports teams. His efforts to obtain justice on behalf of his clients have led to the recovery of tens of millions of dollars for consumers and small businesses nationwide. Jeremy earned his law degree from Campbell University School of Law as part of a joint degree program that also allowed him to earn his M.B.A. from North Carolina State University. Prior to beginning this dual degree program, he attended Elon University where he received his Bachelor of Science.

CAROLINE TAYLOR is a partner at Milberg and focuses on international collective redress. She currently resides in Amsterdam and serves as a liaison between Milberg's various European offices

and the United States. She puts her knowledge of US class action and mass tort procedure to use with the continuously developing and complex landscape of European collective redress. She helps manage the European offices, pushing current cases, strategies, and developing new and innovative case ideas while working with the global Milberg team. As part of her work in Europe she assisted with the startup and staffing of both the Amsterdam and Munich offices. She also works daily with these offices, along with those in London, Peterborough, and Lisbon to push common initiatives and goals. Prior to moving to Europe, Caroline focused on class actions, mass torts, personal injury, and general civil litigation. She takes pride in representing individuals when they are harmed, either physically or financially, through no fault of their own. She enthusiastically brings her love for her clients into her work in Europe, striving each day to bring access to justice to those across the globe. Caroline received her bachelor's degree from Western Kentucky University, where she graduated summa cum laude with a bachelor's degree in Corporate and Organizational Communication with a minor in Marketing. She then graduated magna cum laude from the University of Louisville Brandeis School of Law, where she completed her law degree in just two and a half years. Following law school, she joined Whitfield Bryson & Mason LLP where she worked on numerous high value personal injury cases. She was part of the WBM trial team that obtained a $681,500 verdict in Kentucky during the summer of 2015. She has second chaired various trials throughout her career. She has also been appointed class counsel in numerous cases across the United States. Caroline is a member of the American Association for Justice (AAJ) where she is a past Chair of the Railroad Section and currently serves on the AAJ Board of Governors as the Revitalization Member for Tennessee. She is also an active member of the Tennessee Trial Lawyers Association where she currently holds the position of Treasurer on the Executive Committee. Caroline was recently included in *The Best Lawyers in America* 2020 Edition for Personal Injury Litigation, Super Lawyers 2021 Mid-South Rising Star, and was selected by the National Academy of Personal Injury Attorneys as a Top 10 Personal Injury Attorney in Tennessee Under Age 40, Top 40 Litigation Lawyer Under 40 for the state of Tennessee in 2018, and as a "Top 40 Under 40" by The National Trial Lawyers.


MITCHELL BREIT is a partner at Milberg in the firm's New York City office. During a legal career spanning more than 40 years he has been a champion of consumer and environmental protection, litigating class actions and mass torts of national scope that have brought relief to victims of corporate wrongdoing. His career highlights include litigating the BP Gulf Oil Spill and Toyota Unintended Acceleration cases; settling a large overdraft fee class action against Bank of America; acting as lead counsel in the settlements of environmental claims involving Honeywell, Inc. and ConocoPhillips, Inc.; and serving on the Plaintiffs' Executive Committee in the ReNu MoistureLoc® litigation. Mr. Breit was also appointed as Liaison Counsel in the New York State consolidated Bextra-Celebrex litigation and was co-counsel in cases that ultimately achieved major public health victories against the tobacco industry. Mr. Breit speaks frequently at national litigation conferences involving toxic and mass torts, class actions, and groundwater contamination, including Mealey's, HarrisMartin, Practicing Law Institute, and bar association conferences. He's been named to New York Metro Super Lawyers for ten straight years and to the Best Lawyers in America for three straight years. Mr. Breit has been an Adjunct Professor of Law at Brooklyn Law School, is a Board Member of Public Justice, and is a member of the American Association for Justice. Mr. Breit was educated at the University of North Carolina at Chapel Hill

and the Southwestern University School of Law. He is admitted to practice in New York, New Jersey, and Virginia, multiple federal courts, and the U.S. Supreme Court.

**JONATHAN COHEN** is a partner at Milberg and focuses on consumer class action litigation. Mr. Cohen has spent his entire legal career prosecuting class action cases, including state and federal consumer class actions against banks, mortgage companies, debt collectors, retailers, and insurance companies alleging violations of the Florida Deceptive and Unfair Trade Practices Act, the Telephone Consumer Protection Act, the Fair Credit Reporting Act, and the forced placement of insurance. Mr. Cohen has prosecuted class actions involving data breaches, defective products, deceptive products, breaches of contract, employment discrimination, and illegal taxation. He also served as counsel for the court-appointed receiver in the Ponzi scheme-related matter of *Wiand v. Wells Fargo Bank, et al*., Case No. 8:12-cv-557-T-27EAJ (M.D. Fla.). Prior to joining Milberg, Mr. Cohen was a partner in Morgan & Morgan's Complex Litigation Group in Tampa, Florida. Prior to his time at Morgan & Morgan, Mr. Cohen was a partner at James, Hoyer, Newcomer & Smiljanich, P.A., a firm specializing in the prosecution of nationwide consumer class actions and whistleblower (qui tam) actions. Mr. Cohen is admitted to practice in the state courts of Florida, and in the U.S. District Court for the Middle District of Florida, U.S. District Court for the Southern District of Florida, U.S. District Court for the Northern District of Illinois, U.S. District Court for the Western District of Wisconsin, U.S. District Court for the District of Colorado, and U.S. Courts of Appeals for the First, Fifth, and Eleventh Circuits.

**HARPER SEGUI** is a partner and practice leader in the Consumer Products Group at Milberg. Ms. Segui is an experienced litigator who focuses her practice on representing plaintiffs in complex class action litigation, including defective products, false advertising and mislabeling, and data breaches. Ms. Segui has actively lead a variety of complex cases across the country, having been instrumental in procuring millions of dollars in recoveries for plaintiffs and class members. In addition to individual class actions, Ms. Segui has enjoyed playing active roles in multidistrict litigation and has several times been appointed by courts to serve on Plaintiffs' Steering Committees. She was recently appointed as Co-Lead Counsel in multidistrict litigation involving a data breach. Ms. Segui has a broad spectrum of class actions and complex litigation experience that includes consumer product defects, building product defects, construction defects, unlawful fee charges, automobile defects, false advertising, and data breaches. Although integrally involved in every aspect of her cases, Ms. Segui has particularly honed technical skills which arm her with the ability to develop complex issues of science and technology at the heart of her cases, including the ability to engage experts and present these technical aspects in court. She been appointed to a number of leadership roles, and provided integral support for many more. Representative cases include *In Re: Windsor Wood Clad Windows Prods. Liab. Litig.*, 16-md-02668, MDL No. 2688 (E.D. Wis.) and *In Re: Allura Fiber Cement Siding Litig.*, No. 2:19-mn-02886 (D.S.C.), where she also serves as Co-Class Counsel. She also played essential supporting roles, including as a member of expert teams, in *In Re: MI Windows and Doors, Inc, Prods. Liab. Litig.*, 2:12-mn-00001, MDL No. 2333 (D.S.C.), *In Re: Pella Corp. Architect and Designer Series Windows, Mktg., Sales Prac. and Prods. Liab. Litig.*, 2:14-mn-00001, MDL No. 2514 (D.S.C.). Ms. Segui has been regularly

selected to Super Lawyers as a Top-Rated Attorney in the areas of "Class Action & Mass Torts." She has co-authored several publications on product liability and other topics, and has been a lecturer on complex legal issues.

RACHEL SOFFIN is a partner and practice leader in the Consumer Products Group at Milberg. Ms. Soffin has spent the majority of her career prosecuting class action cases, including state and federal class actions involving product manufacturers and retailers, deceptive trade practices, privacy violations, and insurance and banking disputes. Prior to joining Milberg, Ms. Soffin worked in the area of consumer class actions in Morgan & Morgan's Tampa office. Prior to her time at Morgan & Morgan, Ms. Soffin served as in-house counsel for one of Florida's largest employee leasing companies. For the last eleven years, Ms. Soffin's practice has been exclusively dedicated to consumer class action litigation. Ms. Soffin has successfully represented consumers in numerous class action cases involving a wide range of subjects affecting consumers, including product defects, deceptive trade practices, regulatory violations, and statutory violations: *Cleveland v. Whirlpool Corp.*, No. 0:20-cv-01906-WMV-KMM (D. Minn.) (recent preliminary approval of over $20M value settlement involving defective dishwashers); *Hamm v. Sharp Electronics Corporation,* 5-19-cv-00488 (S.D. Fla.) (over $100M value settlement in action involving allegedly defective microwaves); *Berman et al v. General Motors LLC*, No. 2:18-cv-14371-RLR (S.D. Fla.) ($40 million value settlement for consumers whose vehicles experienced excessive oil consumption and resulting damages); *De Leon v. Bank of America, N.A.* (USA), No. 6:09-cv-01251-JA-KRS (M.D. Fla.) ($10 million settlement for consumers subjected to violations of the Fair Credit Billing Act, a breach of their Cardholder Agreement and deceptive trade practices); *Swift v. Bank of America*, No. 3:14-cv-01539 (M.D. Fla) ($1 million settlement for consumers subjected to TCPA violations); *In re: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 1:12-MD-02324-JAL (S.D. Fla.) ($1.3 million settlement value for consumers subjected to deceptive trade practices for misrepresentations regarding a milk product); *In re: Tracfone Unlimited Service Plan Litigation*, No. 13-cv-03440-EMC (N.D. Cal) ($40 million settlement for consumers subjected to deceptive cellular phone data plan practices); *Corbett v. PharmaCare U.S. Inc.*, No. 3:21-cv-00137-GPC-AGS (S.D. Cal) (recent order denying, in part, motion to dismiss class action involving dietary supplements that are illegal to sell under the FDCA, rejecting defendant's preemption arguments); *Kanan et al v. Thinx Inc.*, No. 20-cv-10341-JVS-JPR (C.D. Cal.) (recent order denying, in part, motion to dismiss class action involving menstrual products that contain allegedly harmful Polyfluoroalkyl substances associated with a variety of negative health effects for humans, including cancer).

Ms. Soffin has held numerous leadership roles in MDLs. Currently, Ms. Soffin serves on the Plaintiffs' Steering Committee in litigation involving defective breast implants, *In re: Allergan Biocell Textured Breast Implant Product Liability Litigation*, No. 2:19-md-02921-BRM-ESK (D.N.J.), where she is on the law and briefing and class certification committees. Ms. Soffin also currently serves as Co-Lead Counsel in the defective cookware MDL, *All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation*, No. 2:21-mc-00491-NR (W.D. Pa.). In addition, Ms. Soffin served as co-lead settlement class counsel in *In Re: Allura Fiber Cement Siding Prods. Liability Litig.*, No. 2:19-mn-02886-DCN (D.S.C.) MDL, which resulted in a $12.5M settlement involving defective fiber cement siding.

Ms. Soffin has also been a lecturer at several conferences involving class action topics. Ms. Soffin is admitted to practice in the state courts of Florida and Georgia, and in the United States District Court for the Middle District of Florida, the United States District Court for the Southern District of Florida, the United States District Court for the Northern District of Georgia, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Eleventh Judicial Circuit. Ms. Soffin has been designated by Super Lawyers as a Florida Rising Star (2011-2013), and as a Florida Super Lawyer (2014-2018, 2022) in the fields of Class Actions/Mass Torts.

ANDREI RADO is a partner at Milberg and focuses his practice on securities litigation, consumer class actions, and SEC whistleblower matters. The cases Mr. Rado is working on currently, or has litigated recently, are typical of his 20-year career: a class action pending in Manhattan federal court on behalf of universal life customers victimized by inflated cost of insurance deductions from the cash value of their policies; a class action in Los Angeles federal court on behalf of investors victimized by a Ponzi scheme; and class actions in Chicago federal court on behalf of consumers whose biometrics have been captured in violation of the Illinois Biometrics Information Privacy Act.   Mr. Rado's securities practice has included numerous litigations nationwide that have resulted in massive recoveries, including, among the most complex, *In re Initial Public Offering Sec. Litig.*, which alleged, in hundreds of consolidated cases, that investment banks manipulated the initial public offerings of hundreds of companies. Mr. Rado has also represented investors against mutual funds including a series of cases alleging that mutual fund managers allowed select investors to profit by improperly timing their trading in fund shares. In another mutual fund litigation, Mr. Rado represented investors victimized by overvaluation of illiquid securities.  Mr. Rado was important in the firm's launching and organization of litigation of Mr. Rado's practice has focused on investigating, launching, and litigating securities class actions and consumer class actions.  These cases are as diverse as consumer fraud itself. Early in his career, Mr. Rado litigated a case against jewelry company Zales for improperly denying credit-insurance claims made by unemployed and retired consumers, and a class action against computer maker Gateway for improperly understating in advertising the costs of internet access to consumers, some of whom incurred internet-access fees of hundreds of dollars. More recently, among other cases, Mr. Rado has launched and litigated consumer cases against companies that misled consumers by inflating the technical specifications of their products, and "all natural" food cases, including the first case alleging that products made from genetically modified organisms (GMOs) should not be advertised as natural.  Prior to joining Milberg, Mr. Rado worked as an attorney at a New York City-based investment bank focusing on compliance, with rules and regulations relating to re-sales of control and restricted securities under the Securities Act of 1933. Mr. Rado also worked at another prominent New York City law firm specializing in plaintiffs' securities class action litigation.  Mr. Rado received his Juris Doctor degree from St. John's University School of Law, cum laude, in 1999, and is admitted to practice law in New York. While in law school, Mr. Rado served as a senior member of the New York International Law Review. He is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York. Mr. Rado was born in Bucharest Romania, and lived in Israel for several years before immigrating to New York in the early 80s. Since the passage of the Dodd-Frank Act in 2010, Mr. Rado has represented numerous whistleblowers before the commission under a

program that rewards and protects whistleblowers that report violations of securities laws to the Securities and Exchange Commission. These involved a variety of complaints, including allegations of bribing foreign officials to gain business, accounting fraud, and consumer fraud, against a variety of companies diverse in size and business.

**ROY SHIMON** is a partner at Milberg and focuses his practice on securities and stockholder derivative litigation in both state and federal courts. Mr. Shimon also has experience in the areas of insider trading and antitrust litigation. Super Lawyers recognized him as a "Rising Star" in the New York Metro area each year from 2014-2018. Mr. Shimon has served as lead or co-lead counsel in a number of complex matters on behalf of stockholders and employee investors, including *In re PLX Tech. Inc. S'holders Litig.* (Del Ch.) (stockholder recovery of $14.1 million); *In re Zynga Inc. Sec. Litig.* (N.D. Cal.) (investor recovery of $23 million); *In re Popular Inc. ERISA Litig.* (D.P.R.) (employee investor recovery of $8.2 million); and *Shanehchian v. Macy's Inc.* (S.D. Ohio) (employee investor recovery of $8.5 million). Mr. Shimon currently represents the City of Charlotte, North Carolina in ongoing antitrust litigation in *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (D.N.J. 2015). Mr. Shimon graduated *cum laude* from Franklin & Marshall College in 2003, where he was inducted into the Pi Sigma Alpha and Alpha Kappa Delta National Honor Societies. He received his J.D. from St. John's University School of Law in 2006, where he served on the Executive Board of the Moot Court Honor Society and as Vice President of the Entertainment & Sports Law Society. Mr. Shimon is admitted to practice in the state and federal courts of New York.

**ROBERT A. WALLNER** is a partner at Milberg and received his B.A. degree from the University of Pennsylvania in 1976 graduating *magna cum laude*. He attended New York University School of Law, earning his J.D. degree in 1979. He was elected to the law school's Order of the Coif and served as an editor of the New York University Law Review. Mr. Wallner has litigated complex securities, consumer and antitrust class actions throughout the country. He has represented plaintiffs in lawsuits arising out of the Madoff Ponzi scheme, including the court-appointed litigation trustee of two Madoff "feeder funds." He has also represented investors in *In re Merck & Co., Inc. Sec. Litig.* (D.N.J.), which resulted in a $1.062 billion recovery, *In re Initial Public Offering Sec. Litig.* (S.D.N.Y), *In re CMS Energy Corp. Sec. Litig.* (E.D. Mich.), and *In re Deutsche Telekom AG Sec. Litig.* (S.D.N.Y.), and consumers in *In re Synthroid Mktg. Litig.* (N.D. Ill.) and the *Mercedes-Benz Tire Litig.* (D.N.J.). Mr. Wallner is a frequent lecturer on securities and complex litigation issues. He has served on the editorial board of Securities Litigation Report, as a faculty member of the American Bar Association's First Annual National Institute on Securities Litigation and Arbitration, and as a member of the Federal Courts Committee of the Association of the Bar of the City of New York. He has been recognized in Lawdragon's "100 Lawyers You Need to Know in Securities Litigation."

14

**GARY KLINGER** is a partner at Milberg and is one of the most well-known and respected data privacy attorneys in the United States, settling more than thirty class actions in privacy violations as lead or co-lead counsel. His privacy practice includes: data breaches, ransomware attacks, unlawful collection and/or disclosure of personal information, and violations of privacy statuses and/or laws, such as the Illinois Biometric Information Privacy Act, Illinois Genetic Information Privacy Act, California Consumer Privacy Act, California Medical Information Act, Telephone Consumer Protection Act, and General Data Protection Regulation. Mr. Klinger has won hundreds of millions of dollars for his clients. Mr. Klinger also represents consumers in class actions and mass arbitration for claims involving false advertising, defective products, consumer fraud, violations of the antitrust laws, and other torts. Currently, Gary is pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

**RANDI KASSAN** is a partner at Milberg Coleman Bryson Phillips Grossman. Ms. Kassan graduated from Binghamton University with a B.A. in Psychology and J.D. from Hofstra University Law School. Before joining Milberg, Ms. Kassan, specialized in mass claim insurance litigation for three years at Baker Sanders, LLC.. She now specializes in Litigation involving pharmaceutical and devices. Ms. Kassan has garnered a plethora of experience and knowledge in the mass tort community by staying intimately involved in all facets of the litigations, specifically Electronic Storage discovery, Party and Non-Party Discovery and Science in multiple mass torts across the country. Ms. Kassan is the litigation and operations manager, managing over 15 litigations including intake, review of cases, client communication, filing of complaints, written discovery, motion practice, expert reports, court conferences, bellwether trial workup, settlement negotiations and settlement process. Ms. Kassan is currently concentrating on representing women with injuries from Taxotere, Transvaginal Mesh, and Talcum Powder. Additionally Ms. Kassan is working on representing unions and municipalities in the Opiate litigation pending in New York, Illinois and Ohio. Ms. Kassan is a member of the American Association of Justice, New York Bar Association and National Trial Lawyers. She is admitted to practice law in the States of New York, Missouri, Massachusetts, Minnesota, Pennsylvania, and Washington DC. She is admitted to practice in numerous federal courts across the country including the United States District Courts in the Eastern, Western, Northern and Southern Districts of New York, Massachusetts, Pennsylvania, Illinois and the District of Colorado.

**VICKI J. MANIATIS** is a partner at Milberg Coleman Bryson Phillips Grossman. Ms. Maniatis graduated with a BA from the Pennsylvania State University in 1990, a J.D. from Hofstra University School of Law in 1993 and has been admitted to practice law in New York and New Jersey since 1994. Ms. Maniatis has worked on mass tort cases involving pharmaceuticals and medical devices for seventeen years. She is a frequent invited lecturer and moderator on a wide variety of pharmaceutical and mass tort cases including, Opioids, Trans Vaginal Mesh, Fosamax, Ortho Evra, Risperdal, Propecia, Avandia, Onglyza, as well as several medical devices. Ms. Maniatis has been appointed by State and Federal Judges to serve as lead counsel and on Plaintiffs' steering committees. Ms. Maniatis performs all levels of bellwether trial case specific work up

15

including, plaintiff, spouse and family member depositions, implanting, explanting, treating physicians, sales representative and expert depositions, for over 30 cases in several mass torts including TVM, Mirena and Propecia cases. Ms. Maniatis has been recognized as a Top Attorney of the NY Metro Area and Top Woman Attorney in the NY Metro Area (2013 to date). Ms. Maniatis serves as a founding member of Mass Tort Med School, an annual medical seminar for Plaintiffs' attorneys that offers numerous physician speakers and cutting edge medical issues. She previously served as a committee co-chair for the Women En Mass group.

**DANIELLE WARD MASON** is a partner at Milberg and specializes in claims involving dangerous drugs and medical devices. Ms. Mason graduated from Auburn Montgomery with a bachelor's degree in economics in 1999, followed by a master of business administration in 2001. Ms. Mason is one of the country's most successful talcum powder litigation attorneys. She has secured nearly $1 billion in verdicts against Johnson & Johnson for failing to warn about ovarian cancer risks. She joined Milberg in 2019 and heads the firm's talc litigation team. In January 2020, Ms. Mason was appointed to the Plaintiffs' Steering Committee (PSC) in federal multidistrict litigation (MDL) over Janssen Pharmaceuticals' drug Elmiron. Previously, in 2017, Ms. Mason was appointed to the PSC of the Invokana MDL. Over the course of her legal and professional career, Ms. Mason has been recognized and honored by numerous organizations. She has been named to the Lawdragon 500 Leading Lawyers, selected as a Super Lawyers "Rising Star" every year since 2014, chosen as one of the "10 Best" Attorneys for Alabama by the American Institute of Personal Injury Attorneys, and included in the 2020 Best Lawyers in America list. Danielle received the Harry M. Philo Award in 2020 for her work on talcum powder litigation, becoming the first black lawyer, and only the third woman, to receive the Award since it started in 1992.

**ELIZABETH MCKENNA** is a partner at Milberg and focuses her practice on complex and class action antitrust cases involving price-fixing, unlawful monopolization, and other anti-competitive practices, as well as consumer protection and privacy cases. Ms. McKenna also represents defrauded individuals and institutional investors in class and other representative actions involving complex financial issues. Elizabeth McKenna graduated from Columbia University in 1991 with a B.A. degree in English, and a J.D. degree from Fordham Law School in 1998. While at Fordham, Ms. McKenna was a Stein Scholar in Public Interest Law & Ethics, a member of the Fordham Environmental Law Journal, and a Co-Director of the Fordham Student Sponsored Fellowship.

**KENT BRONSON** is a partner at Milberg and is an experienced and aggressive litigator who has been representing injured stockholders, consumers, and small businesses in complex commercial litigation for over two decades. Mr. Bronson's practice areas include stockholder class action and derivative litigation, mergers & acquisition litigation, consumer fraud litigation, and others. Mr. Bronson was co-lead counsel in *N.J. Carpenters Pension Fund v. infoGROUP, Inc.* (No. 5334-VCN, 2014) in the Court of Chancery of Delaware, a breach of fiduciary duty action involving the 2010 acquisition of infoGROUP, Inc. for approximately $650 million by a private equity fund.

16

Among other things, Mr. Bronson researched and wrote an amended complaint ultimately sustained by the Chancery Court in a groundbreaking ruling that the majority stockholder/company founder's desire or need for imminent liquidity raised a strong inference that he had a "disabling" conflict-of-interest in voting on a merger that would give him a $100-million-plus cash infusion, and also that the founder dominated most of the other directors such that their approval of the merger could not be deemed independent. This case achieved a remarkable $13 million common fund recovery for the benefit of the class of injured non-insider stockholders. Mr. Bronson was one of the co-lead counsel in *In re Hansen Medical, Inc. S'holder Litigation* (16-CV-294288) in California Superior Court, Santa Clara County, which challenged the fairness of the 2016 sale of Hansen Medical and alleged that it was the product of a severely conflicted and flawed sales process resulting in Hansen's minority stockholders receiving an inadequate price for their Hansen Medical stock.  The litigation resulted in a $7.5 million settlement for the benefit of Hansen's minority stockholders. Mr. Bronson was co-lead counsel in *City of Miami Police Relief & Pension Fund v. Dreier, et. al., and The Ryland Group, Inc.* (BC411143) in California Superior Court, Los Angeles County, a stockholder derivative action for breach of fiduciary duty and other claims against the directors of homebuilder/mortgage lender The Ryland Group, Inc., a Maryland company, arising from systematic Housing & Urban Development ("HUD") regulatory violations in connection with issuance of sub-prime mortgages in the 2000s (the type of conduct resulting in the national housing bubble and subsequent nationwide financial crisis).  The plaintiff's complaint, painstakingly researched and crafted by Mr. Bronson, was at the time only the second complaint ever to survive dismissal under the onerous demand futility standard set by Maryland law. This case resulted in a $1 million recovery for the company as well as significant corporate governance reforms for the benefit of the company and its stockholders. Mr. Bronson is a Thomson-Reuters Super Lawyers® selection from 2013-2020.

DAVID AZAR is a partner at Milberg and focuses his practice on class actions on behalf of defrauded investors and consumers, as well as disputes regarding contracts, partnerships, closely–held corporations, corporate governance, anti-SLAPP issues, real estate, and other complex commercial matters for businesses and individuals. He also provides corporate counseling as an outside general counsel and in pre-litigation and transactional matters, working with transactional or specialty counsel to provide a litigation perspective. Mr. Azar's significant litigation experience includes first-chair trial and appellate work. Mr. Azar has extensive knowledge of dispute resolution, having served as a mediator in more than 160 cases, and he has trained and reviewed other mediators. He served for five years as the editor of the quarterly publication of the Society of Professionals in Dispute Resolution and was honored with the association's Presidential Recognition Award.

**Additional Notable Class Action Cases**

**Antitrust**

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

**Appliances**

*Ersler, et. al v. Toshiba America et. al*, No. 07- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps) (2009).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified) (2004).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Prods. of Am., Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives) (2003).

*Turner v. General Electric Company*, No. 2:05-cv-00186 (M.D. Fla.) (national settlement of claims arising from allegedly defective refrigerators) (2006).

**Automobiles**

*In re General Motors Corp. Speedometer Prods. Liability Litig.,* MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers) (2007).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program) (2002).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct, NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey) (2007).

*Berman et al. v. General Motors LLC,* Case No. 2:18-cv-14371 (S.D. Fla.) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litigation*, Case No. 1:08-mc-00511 (D.D.C.) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans) (2013).

*Bruce, et. al. v. County of Rensselaer et. al.,* Case No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses) (2004).

## Commercial

*In re: Outer Banks Power Outage Litigation,* 4:17-cv-141 (E.D.N.C) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage) (2018)

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee) (2011).

*Elliott et al v. KB Home North Carolina Inc. et al* 08-cv-21190 (N.C. Super. Ct. Wake County) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier)(2017)

*In re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2514 (D.S.C.)(class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows and Doors, Inc., Products Liability Litigation*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re: Atlas Roofing Corporation Chalet Shingle Products Liability Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co*., No. 12-cv-00685-RBJ (D. Colo. 2012) (class action arising from allegedly defective radiant heating systems; Colorado class certified, 2014 WL 3353264, July 9, 2014)).

*In re: Zurn Pex Plumbing Products Liability Litigation*, No. o:08-md-01958, MDL No. 1958 (D. Minn.) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement) (2012).

*Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 , MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall) (2012).

*In re: Chinese Manufactured Drywall Products Liability Litigation,* No. 2:09-md-02047, MDL No. 2047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee) (2012).

*Galanti v. Goodyear Tire & Rubber Co*., No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems) (2003).

*In re Synthetic Stucco Litig.,* Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liability Litig.,* MDL No. 1132 (E.D.N.C.) (represented over 100 individuals homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al. v. Dryvit Systems, Inc.,* Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants) (2002).

*Sutton, et al. v. The Federal Materials Company, Inc., et al*, No. 07-CI-00007 (Ky. Cir. Ct) (Co-Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) ((Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, No. 15-cv-0018, MDL No. 2577 (D.N.J.) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings).

*Bridget Smith v. Floor and Decor Outlets of America, Inc*., No. 1:15-cv-4316 (N.D. Ga.) (Co-Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation* MDL No. 1:15-md-2627 (E.D.Va.) (Formaldehyde case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing, Sales Practices Litigation* MDL No. 1:16-md-2743 (E.D.Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Products Liability Litigation* MDL No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Products Liability Litigation* MDL No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

## Environmental

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station) (2008).

*In re Swanson Creek Oil Spill Litigation*, No. 00-1429 (D. Md.) (Lead Counsel; $2.25 million settlement of litigation arising from largest oil spill in history of State of Maryland) (2001).

## Fair Labor Standards Act/Wage and Hour

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million) (2013).

*Stillman v. Staples, Inc.,* Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million) (2010).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages) (2011).

## Financial

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa.) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.") (2003).

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act) (2008).

**Impact Fees**

*Town of Holly Springs,* No. 17-cvs-6244, 17-cvs-6245, 18-cvs-1373 (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $7.9 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the town) (2019).

*Larry Shaheen v. City of Belmont,* No. 17-cvs-394 (Gaston Co., NC) (Court appointed Class Counsel; Class action settlement with a $1.65 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the city) (2019).

*Upright Builders Inc. et al. v. Town of Apex,* No. 18-cvs-3720 & 18-cvs-4384, (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $15.3 million fund for builders and developers to recover improper capacity replacement and transportation paid fees to the town) (2019).

*Mayfair Partners, LLC et al. v. City of Asheville,* No. 18-cvs-04870 (Buncombe County) (Court appointed Class Counsel; Class action settlement with a $1,850,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Shenandoah Homes, LLC v. Town of Clayton,* No. 19-cvs-640 (Johnston County) (Court appointed Class Counsel; Class action settlement with a $2.7 million fund for builders and developers to recover improper impact fees paid to the town) (2020).

*Brookline Homes LLC v. City of Mount Holly*, Gaston County file no. 19-cvs-1163 (Gaston County) (Court appointed Class Counsel; Class action settlement with a $483,468 fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Eastwood Construction, LLC et. al v. City of Monroe*, Union County file nos. 18-CVS-2692 (Union County) (Court appointed Class Counsel; Class action settlement with a $1,750,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

**Insurance**

*Young, et al.  v. Nationwide Mut. Ins. Co, et al*., No. 11-5015 (E.D. Ky.) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected) (2014).

*Nichols v. Progressive Direct Insurance Co., et al*., No. 2:06cv146 (E.D. Ky.) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million ) (2012).

**Privacy/Data Breach**

*In Re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-1393 (ABJ), MDL No. 2664 (D.D.C.) (court appointed interim Liaison Counsel).

*In re Google Buzz Privacy Litigation,* No. 5:10-cv-00672 (N.D. Cal.) (court-appointed Lead Class Counsel; $8.5 million cy pres settlement) (2010).

*In re: Dept. of Veterans Affairs (VA) Data Theft Litig.,* No. 1:2006-cv-00506, MDL 1796 (D.D.C.) (Co-Lead counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations) (2009).

*In re: Adobe Systems Inc. Privacy Litigation,* No. 5:13-cv-05226 (N.D. Cal. 2015) (settlement requiring enhanced cyber security measures and audits) (2015).

# <u>EXHIBIT A-3</u>

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| THOMAS HODGES, HALEYRAE CANNELL, DANIELLE BENEDICT, CHRISTOPHER BRITTON, XE DAVIS, AND EMILY HOZA, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-24127-BB |
| Plaintiffs, | |
| v. | |
| GOODRX HOLDINGS, INC., | |
| Defendant. | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement and Release (the "Agreement," "Settlement Agreement," or "Class Action Settlement Agreement") is entered into on October 27, 2023 by and among the Class Representatives[1] (also, the "Plaintiffs"), for themselves individually and on behalf of the Settlement Class, and GoodRx Holdings, Inc. (collectively, the "Parties").

**A.     Recitals**

1.     There is pending in the United States District Court for the Southern District of Florida, an action captioned *Thomas Hodges et al. v. GoodRx Holdings, Inc.*, No 1:23-cv-24127-BB (S.D. Fla.), in which the Class Representatives have alleged that GoodRx improperly shared their Data including through its use of marketing and analytics vendors (the "Litigation").

2.     Specifically, Plaintiffs allege that Defendant has violated state and federal wiretapping statutes, consumer protection laws, and common law privacy rights by allegedly

---

[1]     Except as otherwise specified, capitalized terms shall have the meanings set forth in Paragraph B of this Agreement, titled "Definitions."

intercepting and sharing certain user Data with its vendors.  Plaintiffs allege that Defendant did this through its implementation and usage of Internet tracking technologies supplied by third parties, including pieces of code known as SDKs (defined below) and tracking pixels (further defined as "Pixels" herein), and, when using some sites or applications, certain protected personal and health information would purportedly be disclosed in particular circumstances to specific vendors because of the SDKs and Pixels.

3.      Defendant denies all claims asserted against it in the Litigation, denies all allegations of wrongdoing and liability, and denies all material allegations of the class action complaint filed on October 27, 2023 (the "Complaint").

4.      Class Counsel have investigated the facts relating to the claims and defenses alleged and the underlying events in the Litigation, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Litigation, and have conducted a thorough assessment of the strengths and weaknesses of the Parties' respective positions, including information supplied to Class Counsel in the context of mediation.

5.      The Parties desire to settle the claims asserted and that could be asserted, and all claims arising out of or related to the allegations or subject matter of the Complaint, the Litigation, or Defendant's alleged use of third-party tracking technology on the terms and conditions set forth herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Litigation.

6.      This Agreement is the result of vigorous and extensive arm's-length negotiations that took place over the course of several months between Class Counsel and Defendant's Counsel and were overseen by an experienced and highly reputable mediator, Bennett G. Picker, Senior Counsel of Stradley Ronon.  The Parties conducted two separate mediations and multiple

telephonic conferences with Mr. Picker in an effort to resolve their disputes. These efforts, described further in Plaintiffs' motion for preliminary approval of this Agreement, resulted in a settlement in principle, the terms of which are reflected in this Agreement.

7. This Settlement Agreement shall not be deemed or construed to be an admission or evidence of a violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Defendant or of the truth of any of Plaintiffs' claims or allegations, nor shall it be deemed or construed to be an admission or evidence of Defendants' defenses. Without limiting the foregoing in any way, neither this Settlement Agreement nor anything contained herein shall be construed as or deemed to be an admission of any sort by Defendant that any of the claims in the Litigation would be suitable for class treatment in any context other than settlement due to, inter alia, the manageability issues that would arise were class treatment allowed.

8. Plaintiffs and Class Counsel, on behalf of the Settlement Class (as defined below), have concluded—based upon their pre-suit investigation, information exchange, mediation, and taking into account the contested issues involved, including the fact that many Settlement Class Members (as defined below) are bound by arbitration agreements, the expense and time necessary to prosecute the Litigation through trial, the risks and costs associated with further prosecution of the Litigation, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement—that a settlement with Defendant on the terms set forth herein is fair and reasonable and in the best interest of Plaintiffs and the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement reflected in this Settlement Agreement confers substantial benefits upon the Settlement Class.

9.       The Parties, by and through their respective duly authorized counsel of record, and intending to be legally bound hereby, agree that, subject to the approval of the Court as provided for in this Agreement, the Litigation, all matters and claims in the Complaint, and all matters and claims arising out of or related to the allegations or subject matter of the Complaint and Litigation, shall be settled, compromised, and dismissed on the merits and with prejudice on behalf of the Settlement Class upon the following terms and conditions.

**B.       Definitions**

1.       "Agreement" or "Settlement Agreement" means this settlement agreement, including all exhibits hereto.

2.       "Attorneys' Fees and Expenses Award" means the amount awarded by the Court to be paid to Class Counsel from the Settlement Fund, such amount to be in full and complete satisfaction of Class Counsel's claim or request (and any request made by any other attorneys) for payment of reasonable attorneys' fees and Litigation Expenses.

3.       "Claim Form" means the claim form that will be emailed or otherwise provided or made available to Settlement Class Members whereby they may receive a cash payment under the Settlement, substantially in the form attached hereto as Exhibit A.

4.       "Claim Deadline" is the date by which Settlement Class Members must submit a valid Claim Form to receive a cash payment under the Settlement.  The Claim Deadline is sixty (60) days after the Notice Date.

5.       "Class Counsel" means Patrick Montoya, Gary M. Klinger, Jonathan B. Cohen, Alexandra M. Honeycutt, and Daniel K. Bryson of Milberg Coleman Bryson Phillips Grossman, PLLC.

6.     "Class Notice" means the notice of this Settlement Agreement, which shall include the Long-Form Notice and Email Notice, substantially in the forms attached hereto as Exhibits B and C, respectively.

7.     "Class Representatives" means those Persons appointed by the Court to represent the Settlement Class for purposes of the Settlement of the Litigation.

8.     "Court" or "District Court" means the United States District Court for the Southern District of Florida.

9.     "Data" means any data related to a Person's use of websites, applications, or services made available by or through GoodRx, including GoodRx's website and app, GoodRx Gold, and GoodRx Care, including but not limited to information that is or could be used, whether on its own or in combination with other information, to identify, locate, recognize, reach, or contact a person or device.

10.    "Data Disclosure" means the alleged disclosure of any Data of Plaintiffs and Settlement Class Members to any third party or vendor.  This includes, but is not limited to any disclosure to Facebook, Google, Criteo, or other third parties or vendors as a result of any use, including but not limited to the use of Pixels, software development kits ("SDKs"), cookies, application programming interfaces ("APIs"), or any technologies used in relation to websites, applications, or services made available by or through Defendant through the date of execution of this Agreement.

11.    "Defendant" means GoodRx, as defined in this Agreement.

12.    "Defendant's Counsel" means Martin L. Roth and Alyssa C. Kalisky, of Kirkland & Ellis LLP, located at 300 North Lasalle, Chicago, IL 60654, and Olivia Adendorff, of Kirkland & Ellis LLP, located at 4550 Travis Street, Dallas, TX 74205.

13.     "Effective Date" means the date defined in Section N of this Settlement Agreement.

14.     "Email Notice" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form attached as Exhibit C to this Settlement Agreement.

15.     "Final" with respect to a judgment or order means that the following have occurred: (i) the expiration of all deadlines to notice any appeal; (ii) if there is an appeal or appeals, the completion, in a manner that finally affirms and leaves in place the judgment or order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing en banc, or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

16.     "Final Approval Hearing" means the hearing to determine whether the Settlement should be given final approval and whether the application of Class Counsel for attorneys' fees and Litigation Expenses should be approved.

17.     "Final Approval Order" means the order of the Court finally approving this Settlement.

18.     "Final Judgment" means the dismissing with prejudice of the claims of the Class Representatives and Settlement Class Members against Defendant.

19.     "GoodRx" means GoodRx Holdings, Inc., and any and all past, present, and future affiliates, parents, subsidiaries, predecessors, successors, or assignees.

20.    "Litigation Expenses" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, mediating, and settling the Litigation, and obtaining an order of Final Judgment.

21.    "Long-Form Notice" means the written notice substantially in the form of Exhibit B to this Settlement Agreement.

22.    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Notice and Settlement Administration Costs incurred pursuant to this Settlement Agreement, (ii) any taxes owed by the Settlement Fund, and (iii) any Attorneys' Fees and Expenses Award approved by the Court.

23.    "Notice Date" means the date, within forty five (45) days of the entry of the Preliminary Approval Order, when the Settlement Administrator shall email the Email Notice to all Settlement Class Members for whom Defendant has valid email addresses.

24.    "Notice Program" means the notice program described in Paragraph I.1.

25.    "Notice and Settlement Administration Costs" means all approved costs incurred or charged by the Settlement Administrator in connection with providing notice to Settlement Class Members, processing claims, and otherwise administering the Settlement.

26.    "Objection Deadline" shall have the meaning set forth in Paragraph J.3 or as otherwise ordered by the Court.

27.    "Opt-Out" means only persons and entities within the Settlement Class who file a timely and appropriate written Request for Exclusion from the Settlement in accordance with the exact procedures set forth in the Class Notice or who are excluded from the Settlement Class.

28.     "Opt-Out Date" means the date by which Settlement Class Members must mail their Request for Exclusion in order for that request to be excluded from the Settlement Class to be effective.  The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date shall be sixty (60) days after the Notice Date.

29.     "Opt-Out Period" means the period commencing on the date of entry of the Preliminary Approval Order and ending on the Opt-Out Date, during which Settlement Class Members may submit a timely Request for Exclusion.

30.     "Person" or "Persons" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

31.     "Pixel" means any pixel provided by Meta, Google, or a third party or vendor, and any corresponding analytics or advertising technologies.

32.     "Preliminary Approval Order" means the Court order preliminarily approving this Agreement.

33.     "Released Claims" means all claims and other matters released in and by Section F of this Settlement Agreement.  Released Claims do not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the Settlement contained in this Agreement.

34.     "Released Parties" means jointly and severally, individually and collectively, the Defendant, its predecessors; successors; assigns; insurers; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and all of their past, present,

and future heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees.

35.     "Releasing Parties" means Plaintiffs and the Settlement Class Members, and each of their heirs, estates, trustees, principals, beneficiaries, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors in-interest, and assigns and/or anyone claiming through them or acting or purporting to act for them or on their behalf.

36.     "Settlement" means the settlement reflected by this "Settlement Agreement."

37.     "Settlement Administrator" means the class action settlement administrator to be retained by the Settlement Class, through Class Counsel, and approved by the Court, to carry out the Notice Program and administer the distribution process of the Net Settlement Fund.

38.     "Settlement Class" means all natural persons in the United States who used any website, app, or service made available by or through GoodRx at any point prior to the execution date of this Agreement.  Excluded from the Settlement Class are Defendant and its affiliates, parents, subsidiaries, officers, and directors, the Opt-Outs, as well as the judges presiding over this matter and the clerks of said judges.

39.     "Settlement Class Members" means all Persons who are members of the Settlement Class.

40.     "Settlement Fund" means the non-reversionary sum of thirteen million dollars and no cents ($13,000,000), to be paid by Defendant as specified in this Agreement, which shall be used as the only source of payment for all costs of the Settlement.  Defendant's funding obligation under this Settlement Agreement shall under no circumstances exceed the amount of the Settlement Fund.

41.     "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including the Complaint, Email Notice, the Long-Form Notice, this Settlement Agreement, the Claim Form, and important dates and deadlines, among other things as agreed upon by the Parties and approved by the Court as required.

## C.     Certification of the Settlement Class

1.     For settlement purposes only and within the context of the Settlement Agreement only, the Parties will jointly request that the Court certify the Settlement Class.

2.     Plaintiffs identified in the Complaint will move to be appointed Class Representatives, and Class Counsel will move to be appointed as counsel to the Settlement Class for settlement purposes only.

3.     If this Settlement Agreement is terminated or disapproved in whole or in part, or if the Effective Date should not occur for any reason, then the Parties' request for certification of the Settlement Class will be withdrawn and deemed to be of no force or effect for any purpose in this or any other proceeding.  In that event, Defendant reserves the right to assert any and all objections and defenses to certification of a class, and neither the Settlement Agreement nor any order or other action relating to the Settlement Agreement shall be offered by any Person as evidence in support of a motion to certify a class for a purpose other than settlement.

## D.     Settlement Amount

1.     <u>Settlement Amount</u>.  Defendant agrees to make a payment of thirteen million dollars and no cents ($13,000,000) (the "Settlement Amount") and deposit that payment into the Settlement Fund in accordance with the schedule described in Paragraph D.2 (titled "Payment Timing"), which shall be available to pay Notice and Settlement Administration Costs incurred prior to entry of the Final Approval Order and Final Judgment.  For the avoidance of doubt, and

for purposes of this Settlement Agreement only, Defendant's liability under this Agreement shall not exceed thirteen million dollars and no cents ($13,000,000), inclusive of Class Counsel's reasonable Attorneys' Fees and Expenses Award and Litigation Expenses.  The Releasing Parties shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims for which the Released Parties are released by the Releasing Parties pursuant to this Agreement.

2.   <u>Payment Timing</u>.   The Settlement Amount shall be paid in the following installments:

a.   Within fourteen (14) days after the entry of the Preliminary Approval Order, GoodRx will pre-fund the Settlement Fund in the amount of five hundred thousand dollars and no cents ($500,000), which shall be available to pay Notice and Settlement Administration Costs incurred prior to entry of the Final Approval Order and Final Judgment.  Such amount will be deducted from the Settlement Fund due after entry of the Final Approval Order in accordance with this Settlement Agreement.

b.   An amount of twelve million five hundred thousand dollars and no cents ($12,500,000), minus the amount of the Attorneys' Fees and Expenses Award that is approved by the Court shall be paid to the Settlement Fund within fourteen (14) days of the entry of the Final Approval Order.[2]

c.   The timing set forth in this provision is contingent upon the receipt of a W-9 from the Settlement Administrator for the Settlement Fund by the date that the Preliminary Approval Order is issued.  If Defendant does not receive this information by the date that the

---

[2]   As referenced in Section L below, the Attorneys' Fees and Expenses Award will be paid from the Settlement Fund within fourteen (14) days after entry of the Final Approval Order.

Preliminary Approval Order is issued, the payments specified by this paragraph shall be made within thirty (30) days after Defendant receives this information.

3.    <u>Tax Benefits and Consequences</u>.  All taxes owed by the Settlement Fund shall be paid out of the Settlement Fund, shall be considered part of the Notice and Settlement Administration Costs, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments).  The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative shall be solely responsible for the federal, state, and local tax consequences to them of the receipt of funds from the Settlement Fund pursuant to this Agreement. Under no circumstances will Defendant have any liability for taxes or tax expenses under the Settlement Agreement.

4.    <u>Escrow Account</u>.  The Settlement Fund shall be deposited, in accordance with the schedule described in Paragraph D.2 (titled "Payment Timing"), in an appropriate qualified settlement fund established by the Settlement Administrator in an interest-bearing account (as described below) but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Agreement or returned to those who paid the Settlement Fund in the event this Agreement is voided, terminated, or cancelled.

a.    The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation§ 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be

responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any taxes owed by the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible.  Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") at a financial institution determined by the Settlement Administrator and approved by the Parties.  Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check-clearing process.  The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

5.     <u>Amounts Paid Not a Penalty</u>.  It is understood and agreed that no consideration or amount or sum paid, credited, offered, or expended by Defendant in performance of this Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim or offense.

6.     <u>Non-Reversionary</u>.  This Settlement is non-reversionary.  As of the Effective Date, all rights of Defendant in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as described in Section M of this Agreement.  In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Defendant.

7.     <u>Limitation of Liability</u>.

a.     Defendant and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission, or determination of Class Counsel, the Settlement

Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (v) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.  Defendant also shall have no obligation to communicate with Settlement Class Members and others regarding amounts paid under the Settlement.

     b.  The Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) any losses suffered by or fluctuations in the value of the Settlement Fund; or (v) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## E.  Benefits to Settlement Class Members

    1.  As set out in Paragraph H.7, the Net Settlement Fund shall be distributed via pro rata cash payments to Settlement Class Members who submit a valid and timely Claim Form.

## F.  Release, Discharge, and Covenant Not to Sue

    1.  <u>Release</u>.  On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, the Releasing Parties, including Plaintiffs and each Settlement Class Member, will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Parties from any and all past, present, and future claims,

counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, or are based upon or connected to, or relate in any way to the Data Disclosure or Defendant's use of Pixels, SDKs, cookies, APIs, or any similar technologies, or that were or could have been asserted in the Litigation (the "Release").  The Release shall be included as part of the Final Approval Order and Final Judgment so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.  The Release shall constitute and may be pled as a complete defense to any proceeding filed by any Settlement Class Member or Plaintiff arising from, relating to, or filed in connection with the Released Claims.  In the event any Settlement Class Member attempts to prosecute an action in contravention of the Final Approval Order and Final Judgment or the Settlement Agreement, counsel for any of the Parties may forward the Settlement Agreement and the Final Approval Order and Final Judgment to such Settlement Class Member and advise such Settlement Class Member of the Release provided pursuant to the Settlement Agreement.  If so requested by Defendant or counsel for Defendant, Class Counsel shall provide this notice.

a.      Subject to Court approval, as of the Effective Date, Plaintiffs and all Settlement Class Members shall be bound by this Settlement Agreement and the Release, and all of the Released Claims shall be dismissed with prejudice and released.

b.      The Released Claims include the release of Unknown Claims.  "Unknown Claims" means claims relating in any way to the subject matter of the Complaint that could have been raised in the Litigation and that any of the Plaintiffs and each of their respective heirs,

executors, administrators, representatives, agents, partners, trustees, successors, attorneys, and assigns do not know to exist or suspects to exist, which, if known by him, her or it, might affect his, her, or its agreement to release Defendant and all other Released Parties, or might affect his, her, or its decision to agree to, or object or not to object to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs (on behalf of themselves and each Settlement Class Member) expressly shall have, and by operation of the Final Judgment the Settlement Class Members shall have, released any and all Released Claims, including Unknown Claims.  Plaintiffs (on behalf of themselves and each Settlement Class Member) may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs (on behalf of themselves and each Settlement Class Member) expressly shall have, and by operation of the Final Approval Order and Final Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims.

c.      Without in any way limiting the scope of the Release, the Release covers any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Litigation (except for the Attorneys' Fees and Expenses Award nothing in the Release shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein to be paid to Class Counsel as specifically provided in Section L and elsewhere in this Agreement), Defendant's use of third-party or vendor technology as alleged in the Litigation, any claims that arise out of, or are based upon or connected to, or relate in any way to the Data Disclosure or Defendant's use of Pixels, SDKs, cookies, APIs, or any similar technologies, or that were or could have been asserted in the

Litigation, the Settlement, the administration of such Settlement and/or the Released Claims. Class Counsel represent and warrant that they have no attorneys' liens with any Class Representative and/or Settlement Class Member.

In addition, the Class Representatives and, by operation of this Settlement Agreement, each Settlement Class Member, is deemed to have waived (i) the provisions of California Civil Code § 1542, which provides that a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party, and (ii) any law of any state or territory of the United States that is similar, comparable, or equivalent to California Civil Code § 1542.

2.    <u>Covenant Not to Sue</u>. The Releasing Parties covenant not to sue or otherwise seek to establish liability against the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or relating to the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

3.    <u>Enforcement of Release</u>. Notwithstanding any other provision of this Agreement, nothing in this Agreement will prevent the Released Parties from pleading this Settlement Agreement as a full and complete defense to any action, suit, or other proceeding that has been or may be instituted, prosecuted, or attempted with respect to any of the Released Claims and may be filed, offered, and received into evidence, and otherwise used for such defense.

**G.    Settlement Approval Process**

1.    <u>Reasonable Best Efforts</u>. Class Counsel and Defendant's Counsel shall use their reasonable best efforts to effectuate this Agreement and the terms of the proposed Settlement set

forth herein, including but not limited to cooperating in seeking the Court's approval for the establishment of procedures to secure the Final Approval Order and Final Judgement.

2. <u>Cooperation</u>.  The Parties further agree to defend this Agreement against objections made to the Settlement or the Final Approval Order and Final Judgment at the Final Approval Hearing or in any appeal of the Final Approval Order and Final Judgment or in any collateral attack on this Agreement or the Final Approval Order and Final Judgment.

3. <u>Preliminary Approval</u>.  Class Counsel shall prepare and file papers in support of a motion for Preliminary Approval.  The Parties shall work together in good faith and take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

4. <u>Final Approval Hearing</u>.

a. If the Court preliminarily approves this Agreement, Plaintiffs shall request a Final Approval Order and Final Judgment that finds the Settlement Agreement comports with Rule 23 of the Federal Rules of Civil Procedure, the laws of Florida, the United States Constitution, and any other applicable law.  Plaintiffs shall file the motion for Final Approval no later than 14 days before the Final Approval Hearing.

b. Any Settlement Class Member who wishes to appear at the Final Approval Hearing, whether pro se or through counsel, must, by the Objection Deadline, either mail, hand deliver to the Court, or file a notice of appearance in the Litigation, take all other actions or make any additional submissions as may be required in the Long-Form Notice, this Settlement Agreement, or as otherwise ordered by the Court, and mail that notice and any other such pleadings to Class Counsel and Defendant's Counsel as provided in the Long-Form Notice.

5.      <u>Finality of Settlement</u>.  If and when the Settlement becomes Final, through entry of the Final Approval Order and Final Judgment, the Litigation shall be dismissed with prejudice, with the Parties to bear their own costs and attorneys' fees, costs, and expenses not otherwise awarded in accordance with this Settlement Agreement.

6.      <u>No Admission</u>.

a.      Nothing in this Settlement Agreement constitutes an admission by Defendant as to the merits of the allegations made in the Litigation, or an admission by Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by Defendant, or an admission by Defendant as to the suitability for class treatment of some or all claims asserted in the Litigation.

b.      This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Parties or any Settlement Class Member to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of Defendant or other Released Parties; provided, however, that nothing contained in this provision shall prevent this Settlement Agreement from being used, offered, or received in evidence in any proceeding to approve enforce, or otherwise effectuate the Settlement Agreement or the Order and Final Judgment, or to support the reasonableness, fairness, or good faith of any Party participating in the Settlement Agreement (or any agreement or order relating thereto) in any proceeding in which the reasonableness, fairness, or good faith of any Party participating in the Settlement Agreement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment.  This Settlement Agreement may, however, be filed and used in

other proceedings, where relevant, to demonstrate the fact of its existence, including but not limited to Defendant filing the Settlement Agreement and/or the Order and Final Judgment in any other action that has been or may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## H.     Settlement Administration

1.     <u>Settlement Administration Costs</u>.  All agreed-upon and reasonable Federal Rule of Civil Procedure 23 Notice and Settlement Administration Costs will be paid from the Settlement Fund.  Plaintiffs agreed (i) to solicit and did solicit competitive bids for settlement administration, including Notice and Settlement Administration Costs, (ii) to rely upon Email Notice, and (iii) to utilize other appropriate forms of notice where practicable and agreed upon by the Parties, in order to contain the administration costs while still providing effective notice to the Settlement Class Members.

2.     <u>Settlement Administrator's Effectuation of Notice Program</u>.

a.     The Settlement Administrator will provide written notice by email of the Settlement terms to all Settlement Class Members for whom Defendant provides a valid email address.  The Settlement Administrator will also provide publication notice through online banner advertisements.  Settlement Class Members shall have sixty (60) days from the Notice Date to object to the Settlement Agreement.

b.     The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of the Settlement Agreement and any orders of the Court. The Settlement Administrator may request the assistance of the Parties to facilitate providing

notice and to accomplish such other purposes as may be approved by both Class Counsel and Defendant's Counsel.  The Parties shall reasonably cooperate with such requests.

3.      <u>Claim Submission</u>.  To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form. A Claim Form shall be submitted online via the Settlement Website or by U.S. mail and must be postmarked no later than the Claim Deadline.

4.      <u>Settlement Administrator Review</u>.  The Settlement Administrator will review and evaluate each Claim Form for validity, timeliness, and completeness.  If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty (20) days from the date of the written notice to cure the deficiencies.  The Settlement Administrator will provide notice of deficiencies concurrently to Defendant's Counsel and Class Counsel.  If the defect is not cured within the 20-day period, then the Claim will be deemed invalid.  All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but timely cured, shall be considered "Claimants."

5.      <u>Distribution</u>.

a.      No amounts may be withdrawn from the Settlement Fund unless (i) expressly authorized by the Settlement Agreement, or as may be (ii) approved by the Court.  The Parties, by mutual agreement, may authorize the periodic payment of actual reasonable Notice and Settlement Administration Costs from the Settlement Fund as such expenses are invoiced without further order of the Court.  The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with notice of any withdrawal or other payment the Settlement Administrator

proposes to make from the Settlement Fund before the Effective Date at least seven (7) business days prior to making such withdrawal or payment.

b.      The Settlement Fund shall be used by the Settlement Administrator to pay for: (i) reasonable Notice and Settlement Administration Costs incurred pursuant to this Settlement Agreement as approved by the Parties and approved by the Court, (ii) any taxes owed by the Settlement Fund, (iii) any Attorneys' Fees and Expenses Award as approved by the Court, and (iv) payments to Settlement Class Members who submit timely and valid Claims to the Settlement Administrator.  The Settlement Administrator will maintain control over the Settlement Fund and shall be responsible for all disbursements.

6.      <u>Integrity of Claims</u>.

a.      The Parties shall have the right to audit Claim Forms for validity and fraud. In the event that a Party believes that a Claim Form is invalid or fraudulent and should be rejected, it shall bring that to the attention of the other Party, and the Parties shall meet and confer and attempt, in good faith, to resolve any dispute regarding the rejected claim.  Following their meet and confer, the Parties will provide the Settlement Administrator with their positions regarding the disputed claim.  The Settlement Administrator, after considering the positions of the Parties and, if appropriate, seeking any additional information from the Settlement Class Member, will make a determination, subject to review by the Court.

b.      If at any time during the Claims process, the Settlement Administrator has a reasonable suspicion of fraud, the Settlement Administrator shall immediately notify both Class Counsel and Defendant's Counsel of that fact and the basis for its suspicion.  Class Counsel and Defendant's Counsel shall endeavor to reach an agreed-upon solution to any suspected fraud and,

if necessary and agreed upon by Class Counsel and Defendant's Counsel, the Parties will promptly seek assistance from the Court.

      7.    <u>Distribution Process</u>.

      a.    Subject to the terms and conditions of this Settlement Agreement, forty-five (45) days after the Effective Date, the Settlement Administrator shall mail or otherwise provide a payment, via check or electronic transfer, (a "Claim Payment") to each Claimant for their pro rata share of the Net Settlement Fund, in accordance with the following distribution procedures:

      i.    The Settlement Administrator shall utilize the Net Settlement Fund to make all Claim Payments.

      ii.    The amount of each Claim Payment shall be calculated by dividing the Net Settlement Fund by the number of valid Claims.

      b.    Each Claim Payment shall be mailed to the address provided by the Claimant on his or her Claim Form. All Claim Payments issued under this section shall be void if not negotiated within ninety (90) days of their date of issue and shall contain a legend to that effect. Claim Payments issued pursuant to this section that are not negotiated within ninety (90) days of their date of issue shall not be reissued.

      c.    For any Claim Payments returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Claim Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. If the Settlement Administrator finds a valid address and resends the Claim Payment, the ninety (90) day void period will be waived. The Settlement Administrator shall make only one attempt to resend a Claim Payment.

d.      To the extent any money remains in the Net Settlement Fund more than one hundred eighty (180) days after the distribution of Claim Payments to the Claimants, the distribution of the remaining Net Settlement Fund shall be made to the Center for Internet and Society at Stanford Law School.

**I.      Class Notice**

1.      <u>Notice Program</u>.   The Parties agree the following Notice Program provides reasonable notice to the Settlement Class.

a.      Direct notice shall be provided via email to all Settlement Class Members for whom the Settlement Administrator has a valid email address.   Additional notice will be provided via publication through online banner advertisements (the "Publication Notice").

b.      Within fourteen (14) days of the entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the names and email addresses known to Defendant for the Settlement Class Members.

c.      Within forty-five (45) days following entry of the Preliminary Approval Order (the Notice Date), the Settlement Administrator shall email the Email Notice and the Claim Form to all Settlement Class Members for whom an email address is available.

d.      Within forty-five (45) days following the entry of the Preliminary Approval Order (the Notice Date), the Settlement Administration shall also commence the Publication Notice.

e.      The Email Notice will be substantially in the form of Exhibit C.

f.      No later than thirty (30) days following the entry of the Preliminary Approval Order, and prior to the sending of the Email Notice to all Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website.   The Settlement Administrator shall cause the Complaint, Email Notice, Claim Form, this Settlement Agreement,

and other relevant Settlement and court documents (including the Long-Form Notice) to be available on the Settlement Website.  Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by counsel for the Parties.  A link to the Settlement Website shall be included in the Email Notice.

g.      The Settlement Website shall be maintained from the Notice Date until one hundred eighty (180) days after the Effective Date.

h.      The Notice Program shall be subject to approval by the Court as meeting the requirements of Rule 23(c) of the Federal Rules of Civil Procedure.

i.      The Long-Form Notice and Email Notice approved by the Court may be adjusted by the Settlement Administrator in consultation and agreement with the Parties, as may be reasonable and necessary and not inconsistent with such approval.

j.      Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court an appropriate affidavit or declaration from the Settlement Administrator concerning compliance with the Court-approved Notice Program.

k.      The Notice Program shall commence within forty-five (45) days of entry of the Preliminary Approval Order and shall be completed within sixty (60) days of the Preliminary Approval Order, except as otherwise specifically provided above.

2.      <u>CAFA Notice</u>.  In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), the Settlement Administrator will provide notice to the appropriate state and federal officials.  The Settlement Administrator shall cause to be filed with the Court proof of service of the required CAFA notices.

**J.      Objections to Settlement**

1.      Any Settlement Class Member who has not excluded themselves and wishes to object to the proposed Settlement Agreement must file with the Court and serve a written objection

to the Settlement ("Objection") on Class Counsel and Defendant's Counsel, at the addresses set forth in the Long-Form Notice.

2.      Each Objection must (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof or an attestation that the Settlement Class Member is a member of the Settlement Class; (iv) state whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, if any, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objecting Settlement Class Member and/or the objecting Settlement Class Member's counsel has filed an objection to any proposed class action settlement in the past three (3) years.

3.      Objections must be filed with the Court and served on Class Counsel and Defendant's Counsel no later than sixty (60) days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Short-Form and Long-Form Notices.

4.      Class Counsel and Defendant's Counsel may, but need not, respond to the Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing.

5.      An objecting Settlement Class Member has the right, but is not required, to attend the Final Approval Hearing.  If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file a notice of

appearance with the Court (as well as serve the notice on Class Counsel and Defendant's Counsel) by the Objection Deadline.

6.      If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify: (i) the attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing by including counsel's name, address, phone number, email address, the state bar(s) to which counsel is admitted, as well as associated state bar numbers; (ii) any witnesses he or she may seek to call to testify (including the Settlement Class Members) at the Final Approval Hearing; and (iii) all exhibits he or she intends to seek to introduce into evidence.

7.      Any Settlement Class Member who fails to timely file and serve an Objection and notice, if applicable, of his or her intent to appear at the Final Approval Hearing in person or through counsel pursuant to this Settlement Agreement, as detailed in the Long-Form Notice, and otherwise as ordered by the Court, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing, shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of Section J.

**K.      Written Exclusion for Opt-Outs from Settlement Class**

1.      Opt-Out Procedure.  Subject to Court approval, each Person wishing to opt out of the Settlement Class shall have the right to exclude themselves from the Settlement Class pursuant only to the procedure set forth in this Agreement.  Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent ("Request for Exclusion") to the designated Post Office box established by the Settlement Administrator.  The

written notice must clearly identify the individual Person wishing to opt out of the Settlement Class and must manifest the Person's intent to opt out of the Settlement Class.  To be effective, written notice must be postmarked no later than the Opt-Out Date.

2.      <u>Failure to Properly Exclude</u>.  Subject to Court approval, a Request for Exclusion that does not comply with all of the provisions set forth in the applicable Class Notice will be invalid, and the Person serving such an invalid request shall be deemed a Settlement Class Member of the applicable Settlement Class and shall be bound by the Agreement upon entry of the Final Judgment.

3.      <u>Identification of Opt-Outs</u>.  Within seven (7) days after the Opt-Out Date, the Settlement Administrator shall provide the Parties with a complete and final list of all Opt-Outs who have timely and validly excluded themselves from the Settlement Class and, upon request, copies of all completed Requests for Exclusion.  Class Counsel may present to the Court the number of Opt-Outs (if any), no later than ten (10) days before the Final Approval Hearing but may not provide their name and contact information (though Class Counsel should alert the Court that such information is maintained by the Settlement Administrator), except that upon the Court's request, Class Counsel may provide the Court a list of Opt-Outs with such information redacted other than names and cities and states of residence.

4.      <u>Opt-Outs</u>.  All Persons who submit valid and timely Requests for Exclusion, as set forth in Paragraph K.1, referred to herein as "Opt-Outs," shall not be permitted to file an Objection with the Court or receive any benefits of or be bound by the terms of this Settlement Agreement. Defendant reserves its legal rights and defenses, including, but not limited to, any defenses relating to whether any Opt-Out is a Settlement Class Member or has standing to bring a claim against Defendant.  All Persons falling within the definition of the Settlement Class who do not opt out of

28

the Settlement Class in the manner set forth in Paragraph K.1 shall be bound by the terms of this Settlement Agreement and judgment entered thereon.

**L.      Attorneys' Fees, Costs, and Expenses.**

1.      Class Counsel shall request the Court to approve an award of attorneys' fees not to exceed 35% or $4,550,000.00 of the Settlement Fund plus reasonable Litigation Expenses not to exceed $25,000.  The Attorneys' Fees and Expenses Award shall be paid within fourteen (14) days after entry of the Final Approval Order and an order awarding such attorneys' fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the awarded fees and expenses, the Settlement, or any part thereof.  Payment of the Attorneys' Fees and Expenses Award shall be made via wire transfer to an account or accounts designated by Class Counsel after providing necessary information for electronic transfer.  The Attorneys' Fees and Expenses Award paid to Class Counsel will be subject to potential repayment pursuant to the terms set forth below.  For the avoidance of doubt, the Attorneys' Fees and Expenses Award shall be paid from the Settlement Fund.

2.      Each Class Counsel receiving any portion of the Attorneys' Fees and Expenses Award, as a condition of receiving such payment, agrees on behalf of itself and each equity partner and/or shareholder of it that the law firm and its equity partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this Section.  Class Counsel executing this Settlement stipulate, warrant, and represent that they have actual authority to enter into the obligations set forth in this Section on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, and the shareholders, members, and/or partners of that law firm respectively.  In the event that the Effective Date does not occur, or the Final Approval Order or the order granting an Attorneys' Fees and Expenses Award is reversed or modified by a final non-appealable order,

or this Settlement Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, and in the event that the Attorneys' Fees and Expenses Award has been paid to any extent, then Class Counsel with respect to the Attorneys' Fees and Expenses Award paid shall within ten (10) business days from receiving notice from Defendant's Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  If the Attorneys' Fees and Expenses Award is reduced on appeal, but all other terms of the Settlement Agreement remain in full effect, Class Counsel shall repay the portion of the Attorneys' Fees and Expenses Award by which it is reduced and any interest earned thereon at the same rate as earned on the Settlement Fund.  This partial repayment of the Attorneys' Fees and Expenses Award shall be applied to the Settlement Fund and distributed in accordance with the terms of the Settlement Agreement.  If Class Counsel fails to repay any portion of the Attorneys' Fees and Expenses Award as required by this Section, the Court shall, upon application by Defendant and notice to Class Counsel, issue such orders as appropriate to compel compliance by Class Counsel and their law firm, and shall award reasonable attorneys' fees and expenses incurred by Defendant in connection with the enforcement of this Section. Neither the death, incapacitation, personal bankruptcy, or disbarment of any of Class Counsel nor the dissolution, winding up, bankruptcy, merger, acquisition, or other change in the composition or solvency of their law firm shall in any way affect the obligations of Class Counsel in this paragraph.  All obligations set forth in this paragraph shall expire upon the Effective Date.

3.      Class Counsel will file applications with the Court for the requested Attorneys' Fees and Expenses Award no later than fifteen (15) days prior to the Objection Deadline.  Without

the Parties having discussed the issue of attorneys' fees at any point in their negotiations, and with no consideration given or received, Class Counsel has elected to limit its petition for attorneys' fees to no more than thirty-five percent (35%) of the Settlement Fund, plus reimbursement of expenses. Payment of the Attorneys' Fees and Expenses Award shall be made from the Settlement Fund and should Class Counsel seek or be awarded a lesser amount, the difference in the amount sought and/or the amount ultimately awarded to Class Counsel shall remain in the Settlement Fund for distribution to eligible Settlement Class Members. Defendant is not responsible for Class Counsel's allocation of the Attorneys' Fees and Expenses Award amongst themselves.

4.  Payment of the Attorneys' Fees and Expenses Award shall be contingent upon Class Counsel posting a bond in the amount of the entire Attorneys' Fees and Expenses Award to secure repayment to the Settlement Fund in a form satisfactory to the Parties and from a surety agreed upon by the Parties should repayment be required for any of the reasons set forth in Paragraph L.2.

5.  The Parties agree that the Court's approval or denial of any request for Attorneys' Fees and Expenses Award are not conditions to this Settlement Agreement and are to be considered by the Court separately from the final approval, reasonableness, and adequacy of the settlement. Any reduction to the Attorneys' Fees and Expenses Award shall not operate to terminate or cancel this Settlement Agreement.

**M. Termination**

1.  <u>Rejection or Alteration of Settlement Terms</u>. Each Party shall have the right to terminate this Settlement Agreement if:

    a.  The Court denies preliminary approval of this Settlement Agreement;

    b.  The Court denies final approval of this Settlement Agreement;

c.      The Court does not certify the Settlement Class in accordance with the specific Settlement Class definition in this Agreement.

d.      The Court does not enter the Final Approval Order and Final Judgment.

e.      The Final Approval Order and Final Judgment do not become Final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the Settlement on the terms set forth herein; or

f.      In addition to the grounds set forth above, if Settlement Class Members properly and timely submit Requests for Exclusion from the Settlement Class as set forth in Section K, thereby becoming Opt-Outs, and are in a number more than indicated in a separate agreement reached by the Parties that the Parties will seek leave to file under seal, then Defendant shall have the sole option to withdraw from and terminate this Settlement Agreement.

2.      <u>Notice of Termination</u>.  If a Party elects to terminate this Settlement Agreement under this Section M, that Party must provide written notice to the other Party's counsel by hand delivery, mail, or email within seven (7) days of the occurrence of the condition permitting termination.  In the event the occurrence permitting termination is the circumstances addressed in Paragraph M.1.f, Class Counsel shall have forty-five (45) days or such longer period as agreed to by the Parties to address the number of Settlement Class Members who have excluded themselves from the Settlement Class in an effort to reduce that number below the number specified in Paragraph M.1.f.

3.      <u>Termination of Settlement</u>.

a.      If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement, the Preliminary Approval Order, the Final Approval Order and Final Judgment (if applicable), and all

of their provisions shall be rendered null and void; (ii) all Parties shall be deemed to have reverted to their respective statuses in the Litigation as of the date and time immediately preceding the filing of the motion for approval of this Settlement Agreement; (iii) except as otherwise expressly provided or agreed, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed; and (iv) no term or draft of this Settlement Agreement nor any part of the Parties' settlement discussions, negotiations, communications, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), nor any rulings regarding class composition or class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and Final Judgment), will have any effect or be admissible into evidence for any purpose in the Litigation or any other proceeding.

b.      If the Court does not approve the Settlement or the Effective Date cannot occur for any reason, Defendant shall retain all of its rights and defenses in the Litigation, including but not limited to the right to argue that some or all of the claims asserted are not suitable for class certification.  For example, Defendant shall have the right to move to dismiss, to object to the maintenance of the Litigation as a class action, to move for summary judgment, and to assert defenses at trial.  Nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Litigation may properly be maintained as a class action, or for any other purpose.

c.      In the event that this Agreement does not become Final, or this Agreement otherwise is rescinded or terminated, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund (other than Notice and Settlement Administration Costs

33

reasonably and actually incurred), along with any income accrued thereon, shall be returned in full to Defendant.  Such payments will be made within ten (10) calendar days of rescission, termination, or a court's final determination denying final approval of the Agreement and/or any of the Settlement Classes, whichever occurs first.  The Parties expressly reserve all of their rights if this Agreement is rescinded or does not become final.

**N.      Effective Date**

1.      <u>Effective Date</u>.  The "Effective Date" of this Settlement Agreement shall be the first day after the date when all of the following conditions have occurred:

a.      This Settlement Agreement has been fully executed by all Parties and their counsel;

b.      Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement, and approving the Notice Program and Claim Form, all as provided above;

c.      The Court-approved Email Notice has been sent, other notice required by the Notice Program has been effectuated as ordered by the Court;

d.      The Court has entered a Final Approval Order and Final Judgment finally approving this Settlement Agreement, as provided above; and

e.      The time for appeal or to seek permission to appeal from the Final Judgment expires, or if appealed, (1) such appeal is finally dismissed prior to resolution by the applicable court; (2) the Final Judgment is affirmed in its entirety by the court of last resort to which such appeal may be taken; or (3) the Final Judgment is modified, the Parties agree to the modifications and withdraw any pending appeals, and such document is finally entered.

**O.     Miscellaneous**

1.      <u>Recitals</u>.  The recitals and exhibits to this Settlement Agreement are integral parts of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

2.      <u>Entire Agreement</u>.   This Settlement Agreement, along with the agreement referenced in Paragraph M.1.f, shall constitute the entire agreement between Plaintiffs and Defendant pertaining to the settlement of the Litigation against Defendant and supersedes any and all prior undertakings of the Plaintiffs and Defendant in connection therewith.

3.      <u>Inurement</u>.  The terms of the Settlement Agreement are and shall be binding upon and enforceable by, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons, including but not limited to any affiliates, parents, subsidiaries, predecessors, successors, or assignees, claiming any interest in the subject matter hereto through any of the Parties, Releasing Parties, or Released Parties, including any Settlement Class Members.

4.      <u>Modification</u>.  This Settlement Agreement may be modified or amended only by a writing executed by the Plaintiffs and Defendant, subject (if after preliminary or final approval) to approval by the Court.   Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.

5.      <u>Choice of Law</u>.  This Settlement Agreement shall be construed under and governed by the laws of the State of Florida without regard to its choice of law or conflict of laws provisions or principles.

6.      <u>Consent to Jurisdiction</u>.  The Parties and each Settlement Class Member irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of the Agreement and its exhibits, but for no other purpose.  If for any reason this Settlement Agreement is terminated, or fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct

35

of Defendant or Defendant's Counsel pursuant to any obligation Defendant has pursuant to the Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over Defendant, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

7.     Notice.  Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party related to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by e-mail, to the following persons, and shall be addressed as follows:

All notices to Class Counsel or Plaintiffs shall be sent to:

Gary M. Klinger
Jonathan B. Cohen
Daniel K. Bryson
Alexandra M. Honeycutt
Patrick Montoya
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
gklinger@milberg.com
jcohen@milberg.com
dbryson@milberg.com
ahoneycutt@milberg.com
pmontoya@milberg.com

All notices to Defendant's Counsel or Defendant shall be sent to:

Martin L. Roth
Olivia Adendorff
Alyssa C. Kalisky
**KIRKLAND & ELLIS LLP**
martin.roth@kirkland.com
olivia.adendorff@kirkland.com
alyssa.kalisky@kirkland.com

8.     Construction.  This Settlement Agreement shall not be construed more strictly against one Party than another merely because it may have been prepared by counsel for one of

36

the Parties, it being recognized that because of the arm's-length negotiations resulting in this Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement.  All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

9.   Headers.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

10.   Counterparts.   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.  Scanned signatures or signatures sent by email or facsimile shall be as effective as original signatures.

11.   Attorneys' Fees. Defendant shall not be liable for any additional attorneys' fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Agreement.  Class Counsel agree to hold Defendant harmless from any claim regarding the division of any award of Attorneys' Fees and Expenses Award, and any claim that the term "Class Counsel" fails to include any counsel, Person, or firm who claims that they are entitled to a share of any Attorneys' Fees and Expenses Award in this Litigation.

12.   Press Releases.  If any press release is to be issued by the Parties, including their respective counsel, concerning the Settlement, it will be a mutually agreed upon joint press release, for which the Parties will agree upon the language therein prior to release.  Each Party will have absolute discretion to approve or reject language in such a joint press release.  Otherwise, the Parties, and the Parties' counsel, shall not issue any press releases, respond to requests for

comment, or make any postings or commentary on social media or any other platform or outlet about this Litigation or the Settlement.  This provision shall not apply to any legally required disclosures, such as those required by securities laws.

13.     <u>Severability</u>.  In the event that one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of the Settlement Agreement, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision(s) had never been a part of this Settlement Agreement as long as the benefits of this Settlement Agreement to Defendant or the Settlement Class Members are not materially altered, positively or negatively, as a result of the invalid, illegal, or unenforceable provision(s).

14.     <u>Authorization</u>.  Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

DATED:  October 27, 2023

**KIRKLAND & ELLIS LLP**

Martin L. Roth
martin.roth@kirkland.com
Alyssa C. Kalisky
alyssa.kalisky@kirkland.com
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200

Olivia Adendorff
olivia.adendorff@kirkland.com
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, TX  75205
Telephone:      (214) 972-1758
Fascimile:       (214) 972-1771

*Attorneys for Defendant GoodRx Holdings, Inc.*

DATED:  October 27, 2023

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

Gary M. Klinger
gklinger@milberg.com
Jonathan B. Cohen
jcohen@milberg.com
Daniel K. Bryson
dbryson@milberg.com
Alexandra M. Honeycutt
ahoneycutt@milberg.com
Patrick Montoya
pmontoya@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone:      (866) 252-0878

*Counsel for the Class Representatives and
Class Counsel*

# **EXHIBIT A**

\*0000000000000\*

0 0 0 0 0 0 0 0 0 0 0 0 0

| | | |
|---|---|---|
| **YOUR CLAIM FORM MUST BE SUBMITTED ON OR BEFORE <CLAIM DEADLINE>** | *<Thomas Hodges et al. v GoodRx Holdings, Inc* c/o Kroll Settlement Administration LLC PO Box XXXX New York, NY 10150-XXXX | FOR OFFICE USE ONLY |

### *Thomas Hodges et al. v. GoodRx Holdings, Inc. Pixel Settlement*

U.S. District Court for the Southern District of Florida (Case No. 1:23-cv-24127-BB)

### CLAIM FORM

**SAVE TIME BY SUBMITTING YOUR CLAIM ONLINE AT WWW.XXXXXXXXXXXXXXXXXXX.COM**

### GENERAL CLAIM FORM INFORMATION

You may complete and submit a claim online or by mail if you resided in the United States and used any website, app, or service made available by or through GoodRx Holdings, Inc. ("GoodRx") before October 27, 2023 (the "Settlement Class"), including GoodRx, GoodRx Gold, and GoodRx Care (formerly HeyDoctor).

The Email Notice emailed to the Settlement Class Members summarizes your legal rights and options. Please visit the official Settlement Website, www.xxxxxxxxxxxxxxxxxx.com, or call (XXX) XXX-XXXX for more information.

If you wish to submit a claim for Settlement benefits, please provide the information requested below. You must submit your claim online by the Claim Deadline of **<Claim Deadline>**, or complete and mail this Claim Form to the Settlement Administrator, postmarked by **<Claim Deadline>**.

### TO SUBMIT A CLAIM FOR PAYMENT:

1. Complete all sections of this Claim Form.
2. Sign the Claim Form.
3. Submit the completed Claim Form to the Settlement Administrator so that it is postmarked by **<Claim Deadline>**.

This Claim Form should only be used if a claim is being mailed and is not being filed online. You may go to www.xxxxxxxxxxxxxxxxxxxxx.com to submit your claim online, or you may submit this Claim Form by mail to the address at the top of this form. Note that postage to send the Claim Form by mail is not pre-paid.

**Payment will be mailed in the form of a check to the address you provide below. If you would like to receive a payment electronically (e.g., Venmo, PayPal, or ACH) you must submit a Claim Form online at www.xxxxxxxxxxxxxxxxxxxxxx.com.**

\*00000\*                    \*CF\*                    \*Page 1 of 3\*

\*0000000000000\*

0 0 0 0 0 0 0 0 0 0 0 0

## 1.    SETTLEMENT CLASS MEMBER INFORMATION

_____   ___   _____
\*First Name                                                    MI    \*Last Name


_____
\*Mailing Address: Street Address/P.O. Box (include Apartment/Suite/Floor Number)


_____   ___ ___   ___ ___ ___ ___ ___ - ___ ___ ___ ___
\*City                                                         \*State        \*Zip Code           Zip4 (Optional)


_____ @ _____
\*Current Email Address


( ____ ____ ____ ) ____ ____ ____ - ____ ____ ____ ____
Current Phone Number (Optional)


\*Class Member ID: <mark>00000</mark> ___ ___ ___ ___ ___ ___ ___ ___

\*Class Member ID: Your Class Member ID can be found on the Email Notice you received informing you about this Settlement. If you need additional help locating this Class Member ID, please contact the Settlement Administrator at <mark>(xxx) xxx-xxxx</mark>.


## 2.    PAYMENT ELIGIBILITY INFORMATION AND ATTESTATION

Please review the Long-Form Notice and Frequently Asked Questions located on the Settlement Website, <mark>www.xxxxxxxxxxxxxxxx.com</mark>, for more information on who is eligible for a cash payment under the Settlement. Please provide as much information as you can to help us figure out if you are entitled to a Settlement cash payment.

Settlement Class Members who file a valid Claim Form will be eligible to receive a _pro rata_ cash payment from the Net Settlement Fund. Settlement Class Members will receive, at most, one (1) payment.

☐    I attest that I resided in the United States and used any website, app, or service made available by or through GoodRx at least once prior to October 27, 2023.

**\*0000000000000\***

0 0 0 0 0 0 0 0 0 0 0 0

3. **SIGN AND DATE YOUR CLAIM FORM**

I declare under penalty of perjury, under the laws of the United States and the state where this Claim Form is signed, that the information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

I understand that all information provided on this Claim Form is subject to verification and that I may be asked to provide supplemental information before my claim will be considered complete and valid.

_____     \_\_\_\_ \_\_\_\_ / \_\_\_\_ \_\_\_\_ / \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_
Signature                                                                                      Date (mm/dd/yyyy)


_____
Printed Name

---

**Please keep a copy of your completed Claim Form for your records.**

Mail your completed Claim Form to the Settlement Administrator:

*<Thomas Hodges et al. v GoodRx Holdings, Inc*
c/o Kroll Settlement Administration LLC
PO Box XXXX
New York, NY 10150-XXXX

or submit your Claim online at
**www.XXXXXXXXXXXXXX.com**

It is your responsibility to notify the Settlement Administrator of any changes to your contact information after you submit your claim. You can update your contact information on the Contact page at
**www.xxxxxxxxxxxxxxxxx.com.**

**\*75057\***                          **\*CF\***                          **\*Page 3 of 3\***

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

# If You Used GoodRx, via Website, Mobile App or Other Service prior to October 27, 2023, a Settlement About Data Privacy Could Affect You.

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

- A proposed settlement has been reached in a class action lawsuit known as *Thomas Hodges et al. v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127-BB that is pending in the United States District Court for the Southern District of Florida.

- The lawsuit alleges that GoodRx violated the privacy rights of website, app, and other service users by collecting and sharing user information with third parties and marketing and data analytics vendors. The lawsuit alleges that GoodRx did this through the implementation and usage of Internet tracking technologies supplied by third parties, including software development kits ("SDKs") and tracking pixels ("Pixels"). Vendors, including Facebook, Google, and others, purportedly used the personal and health data for purposes of advertising, data analytics, operations, and other business services.

- GoodRx maintains that it has meritorious defenses, and was prepared to vigorously defend the lawsuit, but has agreed to settle the lawsuit to avoid the uncertainty of litigation.

- You are included in the Settlement as a Class Member if you used any GoodRx website, app, or service prior to October 27, 2023 and you live in the United States.

- The proposed Settlement provides $13 million to pay claims plus expenses associated with notice and administration costs.
  - <u>Cash Payment</u>: Class Members who submit a valid and timely Claim Form by **Month 00, 2023** will receive a *pro rata* share cash payment from the Settlement.

**Your legal rights are affected even if you do nothing. Please read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You stay in the Settlement. You get no cash payment. You give up any right to sue about the claims resolved by this Settlement. You are bound by the terms of the Settlement. |
| **SUBMIT A CLAIM** | You must submit a valid and timely claim to get a cash payment from the Settlement. *See* Question 9 for details on how to submit a claim.<br>Deadline to submit a claim is **<Month 00, 2023>**. |
| **EXCLUDE YOURSELF** | You will not be included in the Settlement, and you will get no cash payment. You keep the right to sue GoodRx for the claims resolved by this Settlement. *See* Question 11 for details on how to exclude yourself.<br>Deadline to request to be excluded is **<Month 00, 2023>**. |
| **OBJECT** | You stay in the Settlement but tell the Court why you do not like the Settlement. *See* Question 15 for details on how to object to the Settlement.<br>Deadline to request to object is **<Month 00, 2023>**. |
| **GO TO THE HEARING** | You do not need to attend the hearing, but you can request to speak at the hearing. *See* Question 16 for details on how to request to speak at the hearing.<br>Fairness hearing is scheduled for **<Month 00, 2023>** at **xx:xx x.m.** |

## 1. What is this Notice?

This is a Court-authorized Long-Form Notice of a proposed Settlement (the "Settlement") in a Class Action lawsuit, *Thomas Hodges et al. v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127-BB (the "Litigation"), pending in the U.S. District Court for the Southern District of Florida (the "Court"). The Settlement would resolve the Litigation that arose alleging that Defendant GoodRx Holdings, Inc. ("GoodRx") violated Plaintiffs' and Class Members' privacy rights through its implementation and usage of Internet tracking technologies supplied by third parties or vendors, including pieces of code known as SDKs (defined below) and tracking pixels (further defined as "Pixels" herein), and, when using some sites or applications, certain personal information would purportedly be disclosed in particular circumstances to specific vendors because of the SDKs and Pixels. The Court has granted Preliminary Approval of the Settlement Agreement and has conditionally certified the Settlement Class for purposes of Settlement only. This Long-Form Notice explains the nature of the class action lawsuit, the terms of the Settlement Agreement, and the legal rights and obligations of members of the Settlement Class. Please read the instructions and explanations below carefully so that you can better understand your legal rights. The Settlement Administrator in this case is Kroll Settlement Administration LLC.

## 2. Why did I get this Notice?

You may have received a Notice because you were identified as a person in the United States who used any website, app, or service made available by or through GoodRx prior to October 27, 2023.

## 3. What is this lawsuit about?

The Litigation arises out of GoodRx's implementation and use of the Tracking Pixel on its websites, app, or service, defined below as the "Data Disclosure," during which Plaintiffs allege their web usage data, containing personal information, was shared with third parties, allegedly resulting in the invasion of Plaintiffs' and Settlement Class Members' privacy.

"Data Disclosure" means the alleged disclosure of any Data of Plaintiffs and Settlement Class Members to any third party or vendor. This includes, but is not limited to any disclosure to Facebook, Google, Criteo, or other third parties or vendors as a result of any use, including but not limited to the use of Pixels, software development kits ("SDKs"), cookies, application programming interfaces ("APIs"), or any technologies used in relation to websites, applications, or services made available by or through Defendant through October 27, 2023.

## 4. Why is this a class action?

A class action is a lawsuit in which an individual called a "Class Representative" brings a single lawsuit on behalf of other people who have similar claims. All of these people together are a "Settlement Class" or "Settlement Class Members." When a class action is settled, the Settlement, which must be approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement.

**5. Why is there a settlement?**

To resolve this matter without the expense, delay, and uncertainties of protracted litigation, the Parties reached a settlement that resolves all claims brought on behalf of the Settlement Class related to the alleged Data Disclosure. If approved by the Court, the Settlement Agreement requires GoodRx to provide cash compensation to certain Settlement Class Members who submit valid and timely Claim Forms. The Settlement is not an admission of wrongdoing by GoodRx and does not imply that there has been, or would be, any finding that GoodRx violated the law.

The Court already has preliminarily approved the Settlement Agreement. Nevertheless, because the settlement of a class action determines the rights of all members of the Settlement Class, the Court overseeing this Litigation must give final approval to the Settlement Agreement before it can be effective. The Court has conditionally certified the Settlement Class for settlement purposes only, so that members of the Settlement Class may be given notice and the opportunity to exclude themselves from the Settlement Class or to voice their support or opposition to final approval of the Settlement Agreement. If the Court does not grant final approval to the Settlement Agreement, or if it is terminated by the Parties, then the Settlement Agreement will be void, and the Litigation will proceed as if there had been no settlement and no certification of the Settlement Class.

**6. How do I know if I am a part of the Settlement?**

You are a member of the Settlement Class if you resided in the United States and used any website, app, or service made available by or through GoodRx prior to October 27, 2023.  Excluded from the Settlement Class are Defendant and its affiliates, parents, subsidiaries, officers, and directors, the Opt-Outs, as well as the judges presiding over this matter and the clerks of said judges.

## YOUR BENEFITS UNDER THE SETTLEMENT

**7. What can I get from the Settlement?**

Settlement Class Members who file a valid Claim Form may receive a *pro rata* cash payment from the Net Settlement Fund.  The Net Settlement Fund is what remains of the $13,000,000 Settlement Fund following the payment of the Notice and Settlement Administration Costs, and Attorneys' Fees and Expenses Award.  *See* Question 9 for details on how to submit a Claim Form.

**8. When will I receive the benefits?**

If you timely submit a valid Claim Form for monetary recovery, you will receive payment in the amount approved by the Settlement Administrator after processing your Claim Form, and the Settlement is Final and has become effective.

**9. I want to be a part of the Settlement. What do I do?**

*QUESTIONS? VISIT WWW.XXXXXXXXXXXXXXXXXXX.COM*

To submit a claim for cash compensation, you must timely submit the Claim Form on the Settlement Website at www.xxxxxxxxxxxxxxxxxx.com, or by mail to GoodRx Pixel Settlement, c/o Kroll Settlement Administration LLC, PO Box XXXX, New York, NY 10150-XXXX.

You must submit any claims by the Claim Deadline of <Claim Deadline>. There can be only one (1) valid and timely claim per Settlement Class Member.

| 10. What am I giving up if I remain in the Settlement? |
| --- |

By staying in the Settlement Class, all the Court's orders will apply to you and will bind you. You also give Defendant a "release," which means you cannot sue or be part of any other lawsuit or other legal action against Defendant about or arising from the claims or issues in this Litigation with respect to the alleged sharing of your personal or health information.

The precise terms of the release are in the Settlement Agreement, which is available on the Documents section of the Settlement Website. Unless you formally exclude yourself from this Settlement, you will release your claims. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class or you are welcome to talk to any other lawyer of your choosing at your own expense.

## EXCLUDE YOURSELF FROM THE SETTLEMENT

If you do not want to remain in the Settlement, but you want to keep your legal claims against Defendant, then you must take steps to exclude yourself from this Settlement.

| 11. How do I get out of the Settlement? |
| --- |

To exclude yourself from the Settlement, you must send a Request for Exclusion or letter by mail stating that you want to be excluded from *Thomas Hodges et al. v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127-BB (S.D. Fl.) to the Settlement Administrator. Such Request for Exclusion shall include: (1) your full name and address; (2) the case name and docket number; (3) a written statement that you wish to be excluded from the Settlement; and (4) your signature. You must mail your Request for Exclusion, postmarked **no later than <Opt-Out Date>**, to:

GoodRx Pixel Settlement
c/o Kroll Settlement Administration LLC
PO Box XXXX
New York, NY 10150-XXXX

| 12. If I exclude myself, do I still receive benefits from this Settlement? |
| --- |

No, if you submit a Request for Exclusion, you will not receive anything resulting from the Settlement, but you may sue Defendant over the claims raised in this case, either on your own or as a part of a different lawsuit. If you exclude yourself, the time you have to file your own lawsuit (called the "statute of limitations") will begin to

run again. You will have the same amount of time to file the suit that you had when this case was filed. If you file an objection, you may still receive benefits if you timely file a claim.

## THE LAWYERS REPRESENTING THE CLASS

**13. Do I have a lawyer in this case?**

The Court has appointed the following attorneys to represent the Settlement Class as Class Counsel:

Patrick Montoya,
Gary M. Klinger,
Jonathan B. Cohen,
Alexandra M. Honeycutt, and
Daniel K. Bryson
**Milberg Coleman Bryson Phillips Grossman, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878

These attorneys will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

**14. How will the lawyers for the Settlement Class be paid?**

Class Counsel will request to be paid reasonable attorneys' fees up to 35% of the Settlement Fund, plus their expenses incurred in the Litigation, subject to Court approval. The application for Attorneys' Fees and Expenses Award will be posted on the Settlement Website after it is filed.

## OBJECT TO THE SETTLEMENT

**15. How do I tell the Court that I do not like the Settlement?**

You can tell the Court that you do not agree with the Settlement or some part of it.  If you are a Settlement Class Member, you can object to the Settlement and the Court will consider your views.  In order to object to the Settlement, you must submit a written Objection (such as a letter or legal brief) stating that you object and the reasons why you think the Court should not approve the Settlement.  Your objection should include: (1) the objector's full name, telephone number, email address, and address; (2) proof of being a member of the Settlement Class; (3) the case name and docket number, *Thomas Hodges et al. v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127-BB (S.D. Fla.); (4) whether the objection applies only to the Settlement Class Member or to the entire Settlement Class; (5) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (6) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last three years; (7) whether the objector intends to appear at the Final Approval Hearing; and (8) the objector's signature.

If represented by counsel, the objecting Settlement Class Member must also provide his/her counsel's name, address, phone number, email address, the state bar(s) to which counsel is admitted, as well as associated state bar numbers. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he/she must state as such in the written Objection, and must also identify any witnesses he/she may call to testify at the Final Approval Hearing and all exhibits he/she intends to introduce into evidence at the Final Approval Hearing, which must also be attached to, or included with, the written Objection.

If you file an Objection, you may still receive benefits so long as you timely file a claim. To be timely, written notice of an objection in the appropriate form must be filed with the Court no later than the Objection Deadline, <Objection Deadline>, and served on Class Counsel and Defendant's Counsel (Kirkland & Ellis LLP), as noted below:

| United States District Court for the Southern District of Florida <Court House Address> | Kirkland & Ellis LLP c/o Martin L. Roth and Alyssa C. Kalisky 300th Lasalle Chicago, IL 60654 -- and-- Kirkland & Ellis LLP c/o Olivia Adendorff 4550 Travis Street Dallas, TX 74205 |
| --- | --- |
| Milberg Coleman Bryson Phillips Grossman, PLLC c/o Patrick Montoya, Gary M. Klinger, Jonathan B. Cohen, Alexandra Honeycutt and Daniel K. Bryson 227 W. Monroe Street, Suite 2100 Chicago, IL 60606 | |

# THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to grant final approval of the Settlement. You may attend if you wish, but you are not required to do so.

## 16. Where and when is the Final Approval Hearing?

The Court has already given Preliminary Approval to the Settlement Agreement. A final hearing on the Settlement, called a Final Approval Hearing, will be held to determine the fairness of the Settlement Agreement.

The Court will hold a hearing on <Date>, at <Time> ET in the courtroom of the Honorable <Judge>, Courtroom <#>, which is located in the courthouse at <Court Address>. The purpose of the hearing will be for the Court to determine whether the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class and to determine the appropriate amount of compensation for Class Counsel. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the proposed Settlement. The Court will then decide whether to approve the Settlement.

*QUESTIONS? VISIT WWW.XXXXXXXXXXXXXXXXXXX.COM*

YOU ARE **<u>NOT</u>** REQUIRED TO ATTEND THE FINAL APPROVAL HEARING TO RECEIVE BENEFITS FROM THIS SETTLEMENT. Please be aware that the hearing may be postponed to a later date without notice.

## GET MORE INFORMATION

This Long-Form Notice only provides a summary of the proposed Settlement. Complete details about the Settlement can be found in the Settlement Agreement available on the Settlement Website.

**www.xxxxxxxxxxxxxxxxxxxxxxxx.com**

If you have any questions, you can contact the Settlement Administrator or Class Counsel at the phone numbers set forth above. Do not address any questions about the Settlement or the Litigation to the Clerk of Court, the Judge, or Defendant's Counsel. In addition to the documents available on the Settlement Website, all pleadings and documents filed in this Litigation may be reviewed or copied at the Clerk of Court's office.

# EXHIBIT C

From:
To:
Subject: GoodRx Pixel Settlement could affect you – Please Read

_____

[Sub-head: You could get benefits from a settlement with GoodRx. Please Read.]


Class Member ID: <<Refnum>>


## Records Indicate That You May Have Used GoodRx via Website, Mobile App or Other Service, prior to October 27, 2023, and a Settlement About Data Privacy Could Affect You.

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

**WHY DID YOU GET THIS EMAIL?**
You are receiving this email because records indicate that you might be a Class Member in a Class Action Settlement with GoodRx Holdings, Inc. ("GoodRx"). The lawsuit is called *Thomas Hodges et al. v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127-BB, and is pending in the United States District Court for the Southern District of Florida.

**WHO IS INCLUDED IN THE SETTLEMENT?**
You are included in the Settlement as a Class Member if you used any GoodRx website, app, or service prior to October 27, 2023 and you live in the United States.

**WHAT IS THE LAWSUIT ABOUT?**
The lawsuit alleges that GoodRx violated the privacy rights of website, app, and other service users by collecting and sharing user information with third parties and marketing and data analytics vendors.  The lawsuit alleges that GoodRx did this through the implementation and usage of Internet tracking technologies supplied by third parties, including software development kits ("SDKs") and tracking pixels ("Pixels"). Vendors, including Facebook, Google, and others, purportedly used the personal and health data for purposes of advertising, data analytics, operations, and other business services.

GoodRx maintains that it has meritorious defenses, and was prepared to vigorously defend the lawsuit, but has agreed to settle the lawsuit to avoid the uncertainty of litigation.

**WHAT DOES THE SETTLEMENT PROVIDE?**
The Settlement provides $13 million to pay claims plus expenses associated with notice and administration costs.

- Cash Payment: Class Members who submit a valid and timely Claim Form by **Month 00, 2023** will receive a *pro rata* share cash payment from the Settlement. The total amount paid to claimants depends on the total number of valid claims received and the amount remaining after expenses are paid.

**HOW DO YOU GET A CASH PAYMENT?**
To get money from the Settlement, you must submit a valid Claim Form by **Month 00, 2023**.
- You can download a Claim Form at www.xxxxx.com.
- Request that a Claim Form be mailed to you by calling (xxx) xxx-xxxx or writing to the Settlement Administrator at *GoodRx Pixel Settlement,* c/o Kroll Settlement Administration, PO Box XXXX, New York, NY 10150-XXXX.
- Claim Forms can be submitted online at www.xxxxx.com or you can submit by mailing it to the Settlement Administrator at the address above.

**WHAT ARE YOUR OPTIONS?**
- Do Nothing: If you do nothing, you will be legally bound by decisions of the Court and you will give up any right to sue about the claims resolved by this Settlement and you will not get a payment from the Settlement.
- Submit a Claim:  In order to get a cash payment from the Settlement, you must submit a valid and timely claim, as described above.
- Exclude Yourself: If you exclude yourself, you will not receive a cash payment from the Settlement, but you keep your right to sue GoodRx about the claims in this case. Request for Exclusion must be postmarked by **Month 00, 2023**.

- <u>Object</u>: If you do not exclude yourself, you may write to the Court and explain why you do not like the Settlement.  Objections must be postmarked or filed in person by **Month 00, 2023.**

**WHEN WILL THE SETTLEMENT BE APPROVED?**
The Court will hold a Final Approval Hearing at ==**\<Time\>**==, on ==**\<Date\>**==, at the United States District Court for the Southern District of Florida, ==**\<Court Address\>**==.  At the Final  Approval Hearing, the Court will consider whether the proposed Settlement is fair, reasonable,   and adequate.  The Court may also consider Class Counsel's application for Attorneys'  Fees and Expense Award of up to 35% of the Settlement Fund, plus up to $25,000 in expenses.  If there are objections, the Court will consider them then. You may attend the Final Approval Hearing and ask to be heard by the Court, but you do not have to do so. The Motion for Attorneys' Fees and Expense Award will be posted on the settlement website after it is filed with the Court.

**HOW TO GET MORE INFORMATION.**
***This is only a summary***.  For more detailed information, visit ==**www.xxxxx.com**==, call **000-000-0000**, or write to the Settlement Administrator at GoodRx Pixel Settlement, c/o Kroll Settlement Administration, PO Box XXXX, New York, NY 10150-XXXX.

# **EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| THOMAS HODGES, HALEYRAE CANNELL, DANIELLE BENEDICT, CHRISTOPHER BRITTON, XE DAVIS, AND EMILY HOZA, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-24127-BB |
| Plaintiffs, | |
| v. | |
| GOODRX HOLDINGS, INC., | |
| Defendant. | |

**[PROPOSED] ORDER GRANTING**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

This matter is before the Court on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  Plaintiffs, individually and on behalf of the proposed Settlement Class, and Defendant have entered into a Settlement Agreement and Release, dated October 27, 2023 ("Settlement Agreement") that, if approved, would settle the above-captioned litigation.  Having considered the Motion, the Settlement Agreement together with all exhibits and attachments thereto, the record in this matter, and the briefs and arguments of counsel, IT IS HEREBY ORDERED as follows:

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the same meaning ascribed to those terms in the Settlement Agreement.

2.      The Court has jurisdiction over this litigation, Plaintiffs, Defendant, and Settlement Class Members, and any party to any agreement that is part of or related to the Settlement Agreement.

## PRELIMINARY APPROVAL

3.      The Court has reviewed the terms of the proposed Settlement Agreement, the exhibits and attachments thereto, Plaintiffs' motion papers and briefs, and the declarations of counsel and the Settlement Administrator.  Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations conducted with the assistance of mediator Bennett G. Picker of Stradley Ronon, through which the basic terms of the Settlement were negotiated and finalized.  The Court further observes that the Settlement Agreement is the product of an informal exchange of information between the Parties in connection with mediation and settlement negotiations. The terms of the Settlement Agreement do not improperly grant preferential treatment to any individual or segment of the Settlement Class and fall within the range of possible approval as fair, reasonable, and adequate.

4.      The Court therefore GRANTS preliminary approval of the Settlement Agreement and all of the terms and conditions contained therein.

## PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

5.      Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, the Settlement Class defined in the Settlement Agreement as follows:  All natural persons in the United States who used any website, app, or service made available by or through GoodRx at any point prior to October 27, 2023. Excluded from the Settlement Class are Defendant and its affiliates, parents, subsidiaries, officers, and directors, the Opt-Outs, as well as the judges presiding over this matter and the clerks of said judges.

6.      The Court preliminarily finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes only: the Settlement Class is comprised of millions of individuals; there are questions of law or fact common to the Settlement

Class; the Class Representatives' claims are typical of those of Settlement Class Members; and the Class Representatives will fairly and adequately protect the interests of the Settlement Class.

7.      The Court preliminarily finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only:  the questions of law or fact common to the Settlement Class predominate over individual questions; and class action litigation is superior to other available methods for the fair and efficient adjudication of this controversy.

8.      The Court hereby appoints Plaintiffs Thomas Hodges, HaleyRae Cannell, Danielle Benedict, Christopher Britton, Xe Davis, and Emily Hoza as the Class Representatives of the Settlement Class.  The Court provisionally finds that the Class Representatives are similarly situated to absent Settlement Class Members and therefore typical of the Class and that they will be adequate Class Representatives.

9.      The Court finds the following counsel are experienced and adequate counsel and appoints them as Class Counsel for the Settlement: Gary M. Klinger and Jonathan B. Cohen of Milberg Coleman Bryson Phillips Grossman, PLLC, located at 227 W. Monroe Street, Suite 2100, Chicago, IL 60606 and 3833 Central Ave., St. Petersburg, FL 33713, respectively, and Daniel K. Bryson and Patrick Montoya of Milberg Coleman Bryson Phillips Grossman, PLLC, located at 900 W. Morgan Street, Raleigh, NC 27603, and 201 Sevilla Avenue, Suite 200, Coral Gables, FL 33134, respectively.

## NOTICE AND ADMINISTRATION

10.      Pursuant to the Settlement Agreement, the Parties have designated Kroll Settlement Administration ("Kroll") as the Settlement Administrator.  Kroll shall perform all the duties of the Settlement Administrator set forth in the Settlement Agreement.

11.     The Court finds that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the processes for doing so, and the Final Approval Hearing.  The Court therefore approves the Class Notice and Notice Program and directs the Parties and the Settlement Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and this Order.

12.     The Settlement Administrator shall commence the Notice Program within the time required by the Settlement Agreement.

13.     The Court also approves the Claim Form.

**EXCLUSION AND OBJECTIONS**

14.     Settlement Class Members who wish to opt out and exclude themselves from the Settlement Class may do so by notifying the Settlement Administrator in writing (online or by U.S. mail), postmarked no later than ⬚⬚⬚⬚⬚⬚⬚ (105 calendar days after entry of this Order). To be valid, each request for exclusion must be made in writing and: (a) state the Settlement Class Member's full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian, or person acting under a power of attorney; and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement.  All

Requests for Exclusion must be submitted individually in connection with a Settlement Class Member, *i.e.*, one request is required for every Settlement Class Member seeking exclusion.

15.     All Settlement Class Members who do not opt out and exclude themselves shall be bound by the terms of the Settlement Agreement upon entry of the Final Approval Order and Judgment.

16.     Settlement Class Members who wish to object to the Settlement may do so by submitting a written Objection to the Court in accordance with the procedures outlined in the Class Notice, postmarked no later than _____ (105 calendar days after entry of this Order). Any Settlement Class Member wishing to comment on or object to the Settlement Agreement shall file their Objection with the Court and serve it on Class Counsel and Defendant's Counsel as set forth in the Class Notice.  All such notices of an intent to object to the Settlement Agreement must be written and must: (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof or an attestation that the Settlement Class Member is a member of the Settlement Class; (iv) state whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, if any, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objecting Settlement Class Member and/or the objecting Settlement

Class Member's counsel has filed an objection to any proposed class action settlement in the past three (3) years.

17.     Any Settlement Class Member who does not timely submit a written Objection in accordance with these procedures and the procedures detailed in the Class Notice and Settlement Agreement shall be deemed to have waived any objection, shall not be permitted to object to the Settlement, and shall be precluded from seeking any review of the Settlement Agreement or the Final Approval Order by appeal or other means.

## FINAL APPROVAL HEARING

18.     The Court will hold a Final Approval Hearing on _____ at _____ in the United States District Court, Southern District of Florida, located at _____.

19.     At the Final Approval Hearing, the Court will consider whether: (a) the Settlement is fair, reasonable, and adequate; (b) the Settlement Class should be finally certified; (c) the preliminary appointment of Class Counsel should be made final; (d) the preliminary appointment of the Class Representatives should be made final; (e) Class Counsel's motion for attorneys' fees and Litigation Expenses should be granted; and (f) a final judgment should be entered.

20.     The Court reserves the right to continue the date of the Final Approval Hearing without further notice to Settlement Class Members.

## DEADLINES, INJUNCTION & TERMINATION

| **From Order Granting Preliminary Approval** | |
| --- | --- |
| Defendant will Provide the Class List to the Settlement Administrator | +14 days |
| Defendant to pre-fund Notice and Admin. Costs | +14 days |
| Notice Date | +45 days |
| Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Costs and Expenses | +90 days (15 days before Objection Deadline) |

| Objection Deadline | +105 days (60 days after Notice Date) |
|---|---|
| Opt-Out Date | +105 days (60 days after Notice Date) |
| Claims Deadline | +105 days (60 days after Notice Date) |
| | |
| **Final Approval Hearing** | + 130 days (at minimum) from Order Granting Preliminary Approval |
| Motion for Final Approval | -14 days before Final Approval Hearing |
| Payment of Attorneys' Fees, Costs, and Expenses | +14 days after entry of Final Approval Order |
| Settlement Funding Payment | +14 days after entry of the Final Approval Order. |
| Claim Payments to Class Members | +45 days of the Effective Date |
| Deactivation of Settlement Website | +180 days of the Effective Date |

21.     All proceedings and deadlines in this matter, except those necessary to implement this Order and the Settlement, are hereby stayed and suspended until further order of the Court.

22.     All Settlement Class Members who do not validly opt out and exclude themselves are hereby enjoined from pursuing or prosecuting any of the Released Claims as set forth in the Settlement Agreement until further order of the Court.

23.     In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement: (a) the Settlement Agreement and this Order shall become void, shall have no further force or effect, and shall not be used in the Litigation or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; (b) this matter will revert to the status that existed before execution of the Settlement Agreement; and (c) no term or draft of the Settlement Agreement or any part of the Parties' settlement discussions, negotiations, or documentation (including any briefs filed in support of preliminary or final approval of the Settlement) shall be (i) admissible into evidence for any purpose in this Litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; (ii) deemed an admission or concession by any Settling Party regarding the validity of any of the Released Claims or the

propriety of certifying any class against Defendant; or (iii) deemed an admission or concession by any Party regarding the truth or falsity of any facts alleged in the Litigation or the availability or lack of availability of any defense to the Released Claims.

     **IT IS SO ORDERED**.


Dated: _____

                                                HON. BETH BLOOM
                                                UNITED STATES DISTRICT COURT JUDGE